# EXHIBIT G

**Transcript of the Deposition of Charles Platt
("Platt Tr.")**

Atkinson-Baker, Inc.
www.depo.com

```
 1              IN THE UNITED STATES DISTRICT COURT

 2           FOR THE CENTRAL DISTRICT OF CALIFORNIA

 3                           - - -

 4   CHRISTOPHER DUEKER, on behalf  )
     of himself and all persons     )
 5   similarly situated,            )
                                    )
 6            Plaintiffs,           )
                                    )
 7        v.                        )   Case No.
                                    )   2:18-cv-08751 FMO
 8   CRST EXPEDITED, INC., and      )   (FFMx)
     DOES 1 through 50, inclusive,  )
 9                                  )
              Defendants.           )
10   -------------------------------

11

12

13                   VIDEO DEPOSITION OF

14                      CHARLES PLATT

15                  ALEXANDRIA, VIRGINIA

16                    OCTOBER 15, 2019

17

18   ATKINSON-BAKER, INC.
     (800) 288-3376
19   www.depo.com

20   REPORTED BY:  CATHERINE B. CRUMP
     FILE NO. AD0A099
21

22
```

Atkinson-Baker, Inc.
www.depo.com

```
 1              IN THE UNITED STATES DISTRICT COURT

 2            FOR THE CENTRAL DISTRICT OF CALIFORNIA

 3                           - - -

 4   CHRISTOPHER DUEKER, on behalf    )
     of himself and all persons       )
 5   similarly situated,              )
                                      )
 6             Plaintiffs,            )
                                      )
 7        v.                          )   Case No.
                                      )   2:18-cv-08751 FMO
 8   CRST EXPEDITED, INC., and        )   (FFMx)
     DOES 1 through 50, inclusive,    )
 9                                    )
               Defendants.            )
10   ---------------------------------

11

12

13        Video Deposition of CHARLES PLATT, taken on

14   behalf of Plaintiffs, at the Hilton Garden Inn, 1620

15   Prince Street, Alexandria, Virginia, commencing at

16   9:05 a.m., Tuesday, October 15, 2019, before

17   Catherine B. Crump, a Notary Public in and for the

18   Commonwealth of Virginia.

19

20

21

22
```

Atkinson-Baker, Inc.
www.depo.com

```
 1              A P P E A R A N C E S:

 2    FOR PLAINTIFFS:

 3    LAW OFFICES OF CORREN & CORREN
      BY:  ADAM BLAIR CORREN, ESQ.
 4    5345 N. El Dorado Street, Suite 7
      Stockton, California  95207
 5    (209) 478-2621
      acorren@correnlaw.com
 6

 7    Also Present:  Aaron Wilson, Expert Witness

 8    FOR DEFENDANTS:

 9    SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY
      BY:  CHARLES ANDREWSCAVAGE, ESQ.
10    30 West Monroe Street, Suite 600
      Chicago, Illinois  60603
11    (312) 650-3103
      candrewscavage@scopelitis.com
12

13

14

15       VIDEOGRAPHER:  Fred Walker

16

17

18

19

20

21

22
```

3

Atkinson-Baker, Inc.
www.depo.com

| | | |
|---|---|---|
| 1 | categories: Structured data analysis, digital | 09:16 |
| 2 | forensics, and cyber security. | 09:16 |
| 3 | Q. Okay. This case, as you may or may not | 09:16 |
| 4 | be aware, is what I would call an employment wage and | 09:16 |
| 5 | hour case. Does that make sense? | 09:16 |
| 6 | A. Yes, sir. I'm sorry. When I was | 09:16 |
| 7 | talking, I was explaining about my expertise being | 09:16 |
| 8 | brought to bear. Many of the cases I've worked on | 09:16 |
| 9 | were wage and labor. | 09:17 |
| 10 | Q. All right. Well, you said you worked on | 09:17 |
| 11 | six cases other than this one. Correct? | 09:17 |
| 12 | A. Yes, sir. | 09:17 |
| 13 | Q. So how many other cases have you worked | 09:17 |
| 14 | on, of those six, involve wage and hour cases? | 09:17 |
| 15 | A. As an expert, I think two. | 09:17 |
| 16 | Q. And what are the names of those two | 09:17 |
| 17 | case? | 09:17 |
| 18 | A. The G.E.-Maddy case and the DAC IP case. | 09:17 |
| 19 | Q. And where are those cases venued? | 09:17 |
| 20 | A. The G.E.-Maddy was Federal Court and I | 09:17 |
| 21 | believe DAC IP was also Federal Court. | 09:17 |
| 22 | Q. Can you spell both those cases for me, | 09:17 |

Atkinson-Baker, Inc.
www.depo.com

```
 1   corporate data.                                               09:20
 2       Q.   Then back to the two wage and hour cases             09:20
 3   that you've been involved with, were either of those          09:20
 4   cases involving truck drivers or transportation               09:20
 5   issues?                                                       09:20
 6       A.   No, sir, but I've worked on other cases              09:20
 7   that did involve truck drivers and transportation,            09:20
 8   not as an expert.                                             09:20
 9       Q.   On what capacity have you worked in                  09:20
10   regards to transportation and truck driving matters?          09:20
11       A.   Analyzing driver logs in support of                  09:20
12   another expert.                                               09:20
13       Q.   How many different cases have you worked             09:20
14   on analyzing driver logs?                                     09:20
15       A.   Two aside from this one.                             09:20
16       Q.   What are the names of those two cases?               09:20
17       A.   They were for J.B. Hunt and I'd have to              09:20
18   find the other name.  I don't have the name off the           09:21
19   top of my head.                                               09:21
20       Q.   You're saying the other case, you don't              09:21
21   remember the name?                                            09:21
22       A.   I don't remember the name, no.  They                 09:21
```

Atkinson-Baker, Inc.
www.depo.com

```
 1  that case.  Right?                                        09:22
 2        A.    Yes, sir.                                     09:22
 3        Q.    So I'm just asking other than what            09:22
 4  you've already talked about, can you think of any         09:22
 5  other cases that you've been involved with that           09:22
 6  relate to transportation wage and hour matters?           09:22
 7        A.    I've done some work for waste management      09:22
 8  with their trucks on other cases, in support of           09:22
 9  another expert.                                           09:22
10        Q.    Waste management, like garbage trucks?        09:22
11        A.    Yes, sir.                                     09:22
12        Q.    What's been your involvement with that        09:22
13  situation?                                                09:22
14        A.    Analyzing the GPS data and the truck          09:22
15  information to determine when the trucks were in          09:22
16  movement and when they are not and where they were        09:22
17  located.                                                  09:22
18        Q.    Now turning to our case, the Dueker v.        09:22
19  CRST case, what were you specifically hired by the        09:22
20  defendant to do?                                          09:23
21        A.    To review Mr. Wilson's reports and            09:23
22  provide opinions.                                         09:23
```

21

Atkinson-Baker, Inc.
www.depo.com

```
 1  instances that exceeded 14 hours.                          09:30
 2       Q.   So you looked at -- well, what data did          09:30
 3  you look at to determine how long the drivers were in      09:30
 4  sleeper berth?                                             09:30
 5       A.   I looked at Mr. Wilson's sleeper table           09:30
 6  in his database.                                           09:30
 7       Q.   Did you look at anything else determine          09:30
 8  how long the driver were in sleeper berth?                 09:30
 9       A.   No, sir.                                         09:30
10       Q.   Did you look at what are called driver           09:30
11  logs?                                                      09:30
12       A.   To make this specific determination?             09:30
13       Q.   Correct.                                         09:30
14       A.   No, sir.                                         09:30
15       Q.   You were provided with driver log data           09:30
16  and information for certain drivers.  Correct?             09:30
17       A.   Yes, sir, I was.                                 09:30
18       Q.   Was it your understanding that Mr.               09:30
19  Wilson used the driver logs to put together his            09:31
20  database?                                                  09:31
21       A.   Yes, sir, it was.                                09:31
22       Q.   So was it your understanding that Mr.            09:31
```

28

Atkinson-Baker, Inc.
www.depo.com

```
 1   Wilson obtained the information for the times in the        09:31
 2   sleeper berths from the driver logs?                        09:31
 3        A.   Yes, sir.                                         09:31
 4        Q.   Now you concluded that it was a problem           09:31
 5   that Mr. Wilson did not limit the sleeper berth             09:31
 6   cycles?                                                     09:31
 7        A.   I concluded that it was contrary to what          09:31
 8   I saw in the source code and contrary to his                09:31
 9   deposition testimony.                                       09:31
10        Q.   Did you observe, though, if it was                09:31
11   contrary to the driver logs?                                09:31
12        A.   No, sir.  That was not my finding.                09:31
13        Q.   Okay.  So what was the problem here               09:32
14   then, in your mind?                                         09:32
15        A.   The problem here in my mind was that in           09:32
16   a single shift, Mr. Wilson stated that individuals          09:32
17   had more than 10 or 14 hours of time spent in the           09:32
18   sleeper berth, and in his testimony, he said he             09:32
19   limited it to 10 or 14 hours; and then in the source        09:32
20   code, I see code that should limit it, but when I           09:32
21   look in the data, I don't see a limitation.                 09:32
22        Q.   When you look at the data, you see                09:32
```

Atkinson-Baker, Inc.
www.depo.com

|   |   |   |
|---|---|---|
| 1 | for whether the truck was stationary for any period | 09:33 |
| 2 | of time. | 09:33 |
| 3 | Q.  Well, do you not have -- strike that. | 09:33 |
| 4 | What is your understanding of what Mr. Wilson | 09:33 |
| 5 | was hired by my firm to do? | 09:33 |
| 6 | A.  My understanding, in a broad picture, is | 09:34 |
| 7 | that he was hired by your firm to determine how many | 09:34 |
| 8 | hours a driver spent in the sleeper berth while the | 09:34 |
| 9 | tractor was in motion. | 09:34 |
| 10 | Q.  And your understanding is that that's | 09:34 |
| 11 | the ultimate information that he was asked to | 09:34 |
| 12 | analyze.  Correct? | 09:34 |
| 13 | A.  That is my understanding, yes. | 09:34 |
| 14 | Q.  And what is your understanding of what | 09:34 |
| 15 | Mr. Wilson then had to do in order to analyze and | 09:34 |
| 16 | find out how much time the driver spent in sleeping | 09:34 |
| 17 | berth in California while the truck was moving? | 09:34 |
| 18 | A.  Mr. Wilson had to analyze the driver | 09:34 |
| 19 | logs to determine when the driver went into sleeper | 09:34 |
| 20 | berth status and then analyze the movement of the | 09:34 |
| 21 | vehicle to see if it moved while the driver was in | 09:34 |
| 22 | the sleeper berth. | 09:35 |

31

Atkinson-Baker, Inc.
www.depo.com

|    |                                                                      |       |
|----|----------------------------------------------------------------------|-------|
| 1  | after that, they were in the sleeper berth.  We don't                | 09:38 |
| 2  | know when the tractor moved.  So we have to use some                 | 09:38 |
| 3  | other data source to determine when and how long the                 | 09:38 |
| 4  | tractor was moving.                                                  | 09:38 |
| 5  |     Q.    So you think when the driver indicates | 09:38 |
| 6  | he goes into sleeper berth -- strike that.                           | 09:38 |
| 7  |     Are you saying you don't trust the driver logs | 09:38 |
| 8  | or you don't trust the driver when he says he's in                   | 09:39 |
| 9  | and out of sleeper berth?                                            | 09:39 |
| 10 |     A.    I trust him when he says he goes into  | 09:39 |
| 11 | the sleeper berth, but I don't necessarily believe                   | 09:39 |
| 12 | that he always flags when he goes out of sleeper                     | 09:39 |
| 13 | berth.                                                               | 09:39 |
| 14 |     Q.    Other than what you just said, do you  | 09:39 |
| 15 | have any information or knowledge to reach such a                    | 09:39 |
| 16 | conclusion that leads to you to believe that you                     | 09:39 |
| 17 | don't trust the driver logs when they come out of                    | 09:39 |
| 18 | sleeper berth?                                                       | 09:39 |
| 19 |     A.    Other than seeing instances where driver | 09:39 |
| 20 | logs continue for several days at a time and it says                 | 09:39 |
| 21 | that the person went into the sleeper berth on a                     | 09:39 |
| 22 | Tuesday and their next status is next Friday.                        | 09:39 |

35

Atkinson-Baker, Inc.
www.depo.com

| | | |
|---|---|---|
| 1 | than 24 hours; is that not correct? | 09:40 |
| 2 | A. We're talking about two different | 09:40 |
| 3 | things. Mr. Wilson's sleeper berth time that he's | 09:40 |
| 4 | attributing to being compensable, I saw a dozen that | 09:40 |
| 5 | were over 24. | 09:40 |
| 6 | When we look at the actual data, we see | 09:40 |
| 7 | somebody has flopped in the sleeper berth and then | 09:40 |
| 8 | not changed their status for more than 24 hours. | 09:41 |
| 9 | There's a significantly larger number. | 09:41 |
| 10 | Q. Okay. But other than 12 occasions, you | 09:41 |
| 11 | didn't see or find that Mr. Wilson counted time for | 09:41 |
| 12 | drivers when the sleeper berth time exceeded 24 | 09:41 |
| 13 | hours. Correct? | 09:41 |
| 14 | A. I only saw Mr. Wilson's count those 12 | 09:41 |
| 15 | times. Yes. | 09:41 |
| 16 | Q. And you don't believe that the drivers | 09:41 |
| 17 | were actually in sleeper berth for, say, 24 hours? | 09:41 |
| 18 | A. I find that hard to believe, that a | 09:41 |
| 19 | driver was in the sleeper berth for more than 24 | 09:41 |
| 20 | hours. | 09:41 |
| 21 | Q. Why do you find that hard to believe? | 09:41 |
| 22 | A. Because I've been informed by counsel | 09:41 |

37

Atkinson-Baker, Inc.
www.depo.com

| | | |
|---|---|---|
| 1 | that counsel should do and not me. | 09:44 |
| 2 | Q. Did Mr. Wilson in any way limit the | 09:44 |
| 3 | sleeper berth time that he ultimately included in his | 09:44 |
| 4 | sleeper berth hours count? | 09:44 |
| 5 | A. It's difficult for me to tell. I can | 09:45 |
| 6 | look and say that I see specific examples that exceed | 09:45 |
| 7 | 24 hours. I can see examples that exceed 15 hours, | 09:45 |
| 8 | 14 hours. | 09:45 |
| 9 | In his testimony, he said he would limit it | 09:45 |
| 10 | somewhere around 10 or 14. In his code, it looks | 09:45 |
| 11 | like it was 15, but I would expect that if that code | 09:45 |
| 12 | was run, it would limit everything and I wouldn't see | 09:45 |
| 13 | a hard stop at 15. Instead, I see instances | 09:45 |
| 14 | extending past that. | 09:45 |
| 15 | So it leads me to question whether that code | 09:45 |
| 16 | was run or whether it was run against all the data. | 09:45 |
| 17 | Q. And you think that Mr. Wilson got the | 09:45 |
| 18 | times that he included ultimately in his count from | 09:45 |
| 19 | the driver logs. Correct? | 09:45 |
| 20 | A. That's my belief, yes. | 09:45 |
| 21 | Q. You understand that Mr. Wilson | 09:45 |
| 22 | ultimately was instructed to determine and conduct a | 09:46 |

Atkinson-Baker, Inc.
www.depo.com

| | | |
|---|---|---|
| 1 | hours as sleeper berth time for a driver.  Are you | 10:09 |
| 2 | with me? | 10:09 |
| 3 |     A.    No. | 10:09 |
| 4 |     Q.    No, you're not with me? | 10:09 |
| 5 |     A.    I think that's where we part. | 10:09 |
| 6 |     Q.    All right.  But do you understand -- you | 10:09 |
| 7 | understand what I'm saying, though.  Correct? | 10:09 |
| 8 |     A.    Yes, sir. | 10:09 |
| 9 |     Q.    Okay.  And I'm telling you that what I | 10:09 |
| 10 | just said is what we asked Mr. Wilson to do.  Do you | 10:09 |
| 11 | understand? | 10:09 |
| 12 |     A.    Yes, sir. | 10:09 |
| 13 |     Q.    Okay.  And I think what you're saying is | 10:09 |
| 14 | you understood that myself and my firm had asked Mr. | 10:09 |
| 15 | Wilson to do something slightly different? | 10:09 |
| 16 |     A.    Yes, sir. | 10:09 |
| 17 |     Q.    Is that what you are saying? | 10:09 |
| 18 |     A.    Yes. | 10:09 |
| 19 |     Q.    And you think that I asked Mr. Wilson to | 10:09 |
| 20 | do something slightly different.  Well, strike that. | 10:10 |
| 21 |     Explain your understanding of what the slight | 10:10 |
| 22 | difference was. | 10:10 |

Atkinson-Baker, Inc.
www.depo.com

| | | |
|---|---|---|
| 1 | A.   Was that up to the point that you | 10:10 |
| 2 | described, I think we're fairly in step.  There's 10 | 10:10 |
| 3 | hours of sleeper berth time.  I detected that there | 10:10 |
| 4 | was motion of the tractor in that 10-hour period. | 10:10 |
| 5 | My understanding was that at that point, we're | 10:10 |
| 6 | then saying of those 10 hours, what was the period | 10:10 |
| 7 | that the tractor was in motion -- was it all ten | 10:10 |
| 8 | hours, was it two hours, was it four hours -- and | 10:10 |
| 9 | that the goal was to determine how long was the | 10:10 |
| 10 | driver in the sleeper berth while the tractor was in | 10:10 |
| 11 | motion and that stationary periods didn't count. | 10:10 |
| 12 | Q.   And why did you think that stationary | 10:10 |
| 13 | periods didn't count? | 10:10 |
| 14 | A.   As a -- and this is beyond my -- I | 10:10 |
| 15 | didn't believe stationary periods didn't count | 10:11 |
| 16 | because -- or I believe stationary periods didn't | 10:11 |
| 17 | count because that's what I was informed by counsel. | 10:11 |
| 18 | Q.   So your information in terms of what Mr. | 10:11 |
| 19 | Wilson was asked to do came from defense counsel. | 10:11 |
| 20 | Correct? | 10:11 |
| 21 | A.   And from Mr. Wilson's report as well. | 10:11 |
| 22 | Q.   Now, turn to page 4 of your report, | 10:11 |

Atkinson-Baker, Inc.
www.depo.com

```
 1        Q.   Mr. Platt, I probably just have a few          10:41
 2   more questions for you, although, you never know with    10:41
 3   us attorneys, but in your observations of Mr.            10:41
 4   Wilson's database, did you see shift segments of         10:42
 5   sleeper berth times during which there was no, none      10:42
 6   whatsoever, truck movement?                              10:42
 7        A.   No.                                            10:42
 8        Q.   So you only saw sleeper berth time when        10:42
 9   there was some truck movement within the segment?        10:42
10        A.   Yes.                                           10:42
11        Q.   So would you agree that any sleeper            10:42
12   berth time that ultimately Mr. Wilson counted in his     10:42
13   analysis included only time in which a segment had at    10:42
14   least some truck movement?  Correct?                     10:43
15        A.   Yes.                                           10:43
16        MR. CORREN:  No more questions.                     10:43
17        MR. ANDREWSCAVAGE:  I have a couple of              10:43
18   questions, Mr. Platt.                                    10:43
19        Can we mark this as Exhibit 2.                      10:43
20                    [Platt Exhibit No. 2 was                10:43
21                    marked for identification.]             10:43
22        EXAMINATION BY COUNSEL FOR DEFENDANTS               10:43
```

64

Charles Platt
October 15, 2019

Atkinson-Baker, Inc.
www.depo.com

```
 1                CERTIFICATE OF DEPONENT
 2
 3         I have read the foregoing 69 pages which
 4   contain the correct transcript of the answers made by
 5   me to the questions therein recorded.
 6
 7
 8                        _____
 9                        Christopher Platt
10
11                            - - -
12
13         Subscribed and sworn to before me this
14   _____ day of _____, 2019.
15
16
17
18                        _____
19
20                        Notary Public in and for
21
22   My Commission Expires:
```

70

Charles Platt
October 15, 2019

Ex. G, p. 585