# EXHIBIT 37

Page 1

1              UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF CALIFORNIA

3

4    CHRISTOPHER DUEKER, on behalf of

5    himself and all persons similarly

6    situated,

7            Plaintiffs,

8    v.                    No. 2:18-cv-00381-JAM-CKD

9    CRST EXPEDITED INC., and

10   DOES 1 - 50 inclusive,

11           Defendants.

12   _____/

13

14

15         VIDEOTAPED DEPOSITION OF AARON WOOLFSON

16             WEDNESDAY, SEPTEMBER 25, 2019

17                  OAKLAND, CALIFORNIA

18

19

20

21

22

23

24   DEBORAH MAYER, CSR 9654, RPR CRR CRP CLR

25   Job No. 167273

Page 2

1        BE IT REMEMBERED, pursuant to the laws

2   governing the taking and use of depositions, that on

3   Wednesday, September 25, 2019, 10:18 a.m. - 4:03 p.m.,

4   at 505 14th Street, Suite 900, Oakland CA, 94612,

5   before me, Deborah Mayer, a Certified Shorthand Reporter

6   for the State of California, there personally appeared:

7

8                    AARON WOOLFSON,

9

10  called as a witness by the Defendants, who, being by me

11  first duly sworn/affirmed, was thereupon examined and

12  testified as hereinafter set forth.

25  ///

```
                                                              Page 3
 1                    A P P E A R A N C E S

 2

 3    FOR PLAINTIFFS AND THE WITNESS:

 4            CORREN & CORREN
              BY:  ADAM CORREN, ESQ.
 5            5345 North El Dorado Street
              Stockton, CA  95207
 6

 7

 8

 9    FOR CRST EXPEDITED INC. AND THE DEFENDANTS:

10            SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY
              BY:  ADAM SMEDSTAD, ESQ.
11            BY:  ELIZABETH BOLKA, ESQ.
              3214 W. McGraw Street
12            Seattle, WA  98119

13

14

15

16

17    ALSO PRESENT:

18            JOSEPH SHERRY, Legal Video Specialist.

19

20

21

22

23

24

25    ///
```

1  A.  A relational database is a system of organizing
2  information within various structures or tables so that
3  the relationship of one piece of information can be
4  drawn to other pieces of information within that same
5  database using a common query language known as
6  Structured Query Language.
7  Q.  Is that also referred to as SQL?
8  A.  SQL, or S-Q-L, is an acronym which means
9  Structured Query Language.
10 Q.  And how did you learn to work with SQL?
11 A.  Self-taught.
12 Q.  Are there courses available to learn how to use
13 SQL?
14 A.  I've been asked if I would like to create some
15 curriculum surrounding that.  I think there must be
16 courses, but I have not taken any.
17 Q.  Do you know whether or not there are in fact
18 courses to teach you how to work with SQL?
19 A.  I think it's a common course in schools such as
20 Berkeley and Stanford, yes.
21 Q.  Did you ever audit any of those courses?
22 A.  No.
23 Q.  Have you ever read the materials for those
24 courses?
25 A.  No.

Page 29

1           THE WITNESS: Sounds like a good plan.

2           THE VIDEOGRAPHER: This is the end of media

3 number 1. We're going off the record at 10:58 a.m.

4 (Recess.)

5           THE VIDEOGRAPHER: This is the beginning of

6 media number 2. We're back on the record at 11:05 a.m.

7 BY MR. SMEDSTAD:

8    Q. Mr. Woolfson, we took a break so that you could

9 check your records to find out when you were retained;

10 did you have an opportunity to take a look at you're

11 records?

12    A. I did.

13    Q. And when were you retained?

14    A. Sometime shortly before June 1st, 2019.

15    Q. And who retained you?

16    A. The attorney who -- the attorneys for

17 plaintiffs.

18    Q. How were you retained? Did you get a phone

19 call?

20    A. I got a phone call.

21    Q. From whom?

22    A. The original call was from Dr. Peterson.

23    Q. And what did Dr. Peterson tell you?

24    A. Dr. Peterson asked if I'd be available to help

25 him, his client, with the structuring and the

Page 30

1  compilation of data that had been provided by defendants
2  in a case called Dueker.
3       Q.   Did he tell you anything else about what kind
4  of help he needed?
5       A.   No.
6       Q.   And did you subsequently have communications
7  with the lawyers who represent the plaintiffs in this
8  case?
9       A.   I believe I had a call, yes.
10      Q.   With whom?
11      A.   With Adam.
12      Q.   And did Mr. Corren explain to you what he would
13 like to retain you to do?
14      A.   Briefly.
15      Q.   What did he tell you he would like to retain
16 you to do?
17      A.   Structure -- provide structure to and analysis
18 of a set of data that was provided by defendants.
19      Q.   Anything else?
20      A.   Not that I can think of.
21      Q.   Did you ever get any further clarification from
22 either Dr. Peterson or Mr. Corren regarding the nature
23 of your assignment in this case?
24      A.   Not initially, no.
25      Q.   Well, when I say did you ever, I mean through

Page 31

1  to this date. Have you received any further
2  clarification about the nature of your assignment in
3  this case?
4  A. Yes.
5  Q. And what additional clarification were you
6  provided and who provided it?
7  A. I was asked to structure data into shifts of
8  drivers and to identify portions of shifts where
9  employees were marked as sleeper within California on
10  shifts that were driven by drivers working for
11  defendant. That's, to my recollection, the task that I
12  was given.
13  Q. And who provided you with that task?
14  A. I believe it was Adam.
15  Q. And you also used the break to look up how much
16  time you've spent on your assignment from the time that
17  you were retained just before June of 2019 through the
18  present; how much time have you spent?
19  A. 62.48 hours.
20  Q. Do you have an idea of how many of those 62.48
21  hours were spent preparing your first report?
22  A. I do not.
23  Q. When were you told that the plaintiffs lawyers
24  would like you to structure data into shifts and
25  identify portions of shifts that were listed as

Page 32

1  in-sleeper while a truck was driving in California?
2      A.   When?
3      Q.   Yes, when.
4      A.   Sometime between my first communication with
5  counsel and when I started working on it.  That's as
6  much as I recall.  It was within two weeks of that first
7  phone call that I started working on it.  May have been
8  even just a week -- wasn't much -- it wasn't much time
9  there.  So sometime between mid-May and the 1st of June.
10     Q.   What did you tell plaintiff's counsel that you
11 would need in order to perform this assignment?
12     A.   The DOT truck log data that was provided by the
13 defendants or should be provided by defendants, and any
14 other data such as payroll.
15     Q.   Did you request any other information?
16     A.   I don't think so.
17     Q.   Why did you need the DOT log data?
18     A.   Well, the data that the defendants provided, or
19 the DOT data that's within the possession of the
20 defendants, indicates on-duty, off-duty, driving, and
21 sleeper, the same type of data that I was using in
22 Bluford when I was expert on behalf of Bluford in
23 Bluford vs Summit and Bluford vs Safeway.
24          So I remembered what we had used in Bluford,
25 and in some other cases involving DOT truck logs, and I

Page 170

1                    CERTIFICATE OF REPORTER

2

3     STATE OF CALIFORNIA        )

4     ss:                        )

5     COUNTY OF ALAMEDA          )

6

7            I, Deborah Mayer, a Certified Shorthand
    Reporter duly licensed and qualified in and for the
8   State of California, do hereby certify that there came
    before me on Wednesday, September 25, 2019 the following
9   named person:

10                      AARON WOOLFSON

11  who was duly sworn to testify to the truth, the whole
    truth, and nothing but the truth of knowledge concerning
12  the matters in controversy in this proceeding, who was
    thereupon examined under oath, whose examination was
13  reduced to typewriting under my supervision, and that
    this deposition is a true record of the testimony given
14  by said witness.

15           I further certify, pursuant to FRCP 19
    Rule 30(e)(1), the signature of the deponent:
16
            _X_ was requested by the deponent or a party
17  before the completion of the deposition;

18          ___ was not requested by the deponent or a
    party before the completion of the deposition.
19
             I further certify that I am neither attorney or
20  counsel for, nor related to, nor employed by any of the
    parties to the action in which this deposition is taken,
21  and that I am not a relative or employee of any attorney
    or counsel employed by the parties hereto or financially
22  interested in this matter.

23  Dated:  Oct. 8, 2019.        _____
                                 DEBORAH MAYER, RPR CRR CRP CLR
24                               CALIFORNIA CSR 9654

25    ///