Christopher C. McNatt, Jr. (SBN 174559)
cmcnatt@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, LLP
2 North Lake Avenue, Suite 560
Pasadena, CA 91101
P: 626-795-4700
F: 626-795-4790

Charles Andrewscavage (Admitted *Pro Hac Vice*)
candrewscavage@scopelitis.com
Jared S. Kramer (Admitted *Pro Hac Vice*)
jskramer@scopelitis.com
SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
30 West Monroe Street, Suite 600
Chicago, IL 60603
P: 312-255-7200
F: 312-422-1224

Attorneys for Defendant, CRST Expedited, Inc.

**ADDITIONAL COUNSEL LISTED ON NEXT PAGE**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER DUEKER, on behalf of himself and all persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CRST EXPEDITED, INC., and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 2:18-cv-08751-FMO-FFM<br><br>**CRST'S REPLY BRIEF IN SUPPORT OF ITS MOTION IN LIMINE TO EXCLUDE PLAINTIFF'S EXPERTS**<br><br>Hearing Date: January 9, 2020<br>Time:  10:00 a.m.<br>Courtroom:  6D<br>Judge:  Fernando M. Olguin |

James H. Hanson (Admitted *Pro Hac Vice*)
jhanson@scopelitis.com
R. Jay Taylor, Jr. (Admitted *Pro Hac Vice*)
jtaylor@scopelitis.com
Elizabeth M. Bolka (Admitted *Pro Hac Vice*)
ebolka@scopelitis.com
SCOPELITIS GARVIN LIGHT HANSON & FEARY, P.C.
10 West Market Street, Suite 1400
Indianapolis, IN 46204
P: 317-637-1777
F: 317-687-2414

Adam. C. Smedstad (SBN 303591)
asmedstad@scopelitis.com
SCOPELITIS GARVIN LIGHT HANSON & FEARY, P.C.
3214 West McGraw Street, Suite 301F
Seattle, WA 98199
P: 206-288-6192
F: 206-299-9375

Attorneys for Defendant, CRST Expedited, Inc.

# TABLE OF CONTENTS

I. ARGUMENT ..................................................................................................2

    A. Woolfson lacks the qualifications to be an expert. ..............................2

    B. Plaintiff attempts to change the analysis Woolfson performed. ...........3

    C. Woolfson's reliance on sleeper berth log entries without further analysis demonstrates why his analysis is unreliable. ..........................4

II. CONCLUSION................................................................................................5

# TABLE OF AUTHORITIES

**Cases**

*Abarca v. Merck & Co., Inc.*,
  2010 WL 4643642 (E.D. Cal. Nov. 9, 2010) ............................................................. 5

*Brown v. China Integrated Energy Inc.*,
  2014 WL 12576643 (C.D. Cal. Aug. 4, 2014) ........................................................... 3

*Cascade Yarns, Inc. v. Knitting Fever, Inc.*,
  2012 WL 5194085 (W.D. Wash. Oct. 18, 2012) ....................................................... 4

*Robinson v. Open Top Sightseeing San Francisco, LLC*,
  2018 WL 895572 (N.D. Cal. Feb. 14, 2018) ......................................................... 2, 3

*Rojas v. Marko Zaninovich, Inc.*,
  2011 WL 4375297 (E.D. Cal. Sept. 19, 2011) ........................................................... 4

**Rules**

Federal Rules of Evidence 702 ....................................................................................... 1

Pursuant to the Court's Standing Order (ECF No. 47) and Federal Rules of Evidence 702-704, Defendant, CRST Expedited, Inc. ("CRST"), respectfully submits this reply brief in support if its Motion in Limine (ECF No. 72) to strike Plaintiff's experts under *Daubert*.[1] Plaintiff's legal theory is that time spent in the sleeper berth of a *truck that is moving* in California is compensable under California law because the truck's movement prevents individuals in the sleeper berth from leaving the truck, thereby subjecting the individual to the control of the employer and rendering that time compensable. Plaintiff has tendered two experts to establish the *facts* to support this theory: Mr. Aaron Woolfson ("Woolfson"), who claims to have analyzed data produced by CRST and reliably determined how much time class members spent in the sleeper berth of a truck *moving* in California, Ex. A ¶ 29; Ex. B, ¶ 38, and Dr. Jeffrey S. Petersen ("Petersen"), who claims to have used the results of Woolfson's "data analysis" to estimate the amount of time class members "spent in the sleeper berths per year while the truck was moving in California." Ex. C, ¶ 24.

CRST's Motion to Strike demonstrated that Woolfson lacked the expertise to perform the analysis he purported to and that the result of his work was demonstrably unreliable (e.g., individuals spending days on end in the sleeper berth of a moving truck). Plaintiff's opposition does nothing to substantiate Woolfson's credentials, to contest the facial invalidity of his work, or to explain how Petersen can offer an opinion without relying on Woolfson's "analysis." The Court should exclude their testimony.

---

[1] Unless specified otherwise, all capitalized terms retain the same meaning as defined in CRST's portions of the Joint Brief, ECF No. 72-1. Similarly, unless otherwise noted, all exhibit references are to exhibits attached to the Joint Motion as ECF Nos. 72-3 through 72-12 and all citations reference the page number within those consecutively-paginated Exhibits.

## I. ARGUMENT

### A. Woolfson lacks the qualifications to be an expert.

Nothing in Plaintiff's opposition would support finding that Mr. Woolfson has the necessary qualifications to be an expert in structuring and analyzing data. While a college degree is not a prerequisite for being an expert, Woolfson still needs to possess the requisite "knowledge, skill, experience, [or] training" to demonstrate that his testimony is sufficiently reliable.

Plaintiff offers no basis on which to question the validity of prior determinations that have found that Woolfson "failed entirely to show he had the appropriate credentials" to be admitted as an expert in structuring and analyzing data. *Robinson v. Open Top Sightseeing San Francisco, LLC*, 2018 WL 895572, at *4 (N.D. Cal. Feb. 14, 2018); *see also* Ex. H.[2] Through silence, Plaintiff also admits that Mr. Woolfson has never been qualified as an expert on GPS and has never had any training in the relational databases he uses to perform his analysis, skills and training at the core of his purported expertise. As one court succinctly found, "he's no expert." *See* Ex. H at 612; *see also* ECF No. 72-01 at 3, 13-14 (citing cases where courts excluded Woolfson as an expert).

The fact that the *Robinson* court allowed Woolfson to testify as a percipient witness does nothing to establish his credentials as an expert. *Robinson*, 2018 WL 895572 (finding that even as a percipient witness, Woolfson's "testimony was not particularly helpful"). Nor is the fact that some courts have allowed him to testify sufficient to qualify him here; prior court qualifications do not obviate the need for the witness to demonstrate he is qualified to testify in subsequent cases. *Brown v. China Integrated Energy Inc.*, 2014 WL 12576643, at *5 (C.D. Cal. Aug. 4, 2014) ("an

---

[2] In coming to this conclusion, the court found Mr. Woolfson's lack of educational training relevant to the inquiry. *See* Ex. H at 595 ("The Court: So you dropped out of college? The Witness: I did because I—I love organizing— The Court: I don't need to know why.")

MBA and significant experience as an expert witness in the past is insufficient to qualify as an expert witness now"). Finally, Plaintiff's attack on Charles Platt ("Platt") is nothing more than misdirection. Platt has all of the qualifications and experience that Woolfson lacks. Ex. E, at 474-480 (describing Platt's credentials). Plaintiff has not demonstrated that Woolfson has any qualifications that would render him competent to analyze GPS data let alone to structure and analyze databases.

### B. Plaintiff attempts to change the analysis Woolfson performed.

As noted above, Plaintiff's request to transform off-duty time spent in the sleeper berth into compensable time turns on his ability to demonstrate that CRST exerted control over putative class members by requiring them to remain in the sleeper berth of a moving truck. Plaintiff's experts produced reports and testified that, collectively, they were capable of calculating how much compensation CRST owed the putative class members for time they spent in the sleeper berth of a truck moving California. Woolfson determined how much time class members spent in the sleeper berth of a truck *moving* in California, while Petersen used Woolfson's "data analysis" to estimate the amount of time putative class members "spent in the sleeper berths per year while the truck was moving in California." Ex. C, ¶ 24. In the Joint Memorandum, CRST highlighted the myriad methodological errors Woolfson committed in performing his "analysis" of time a driver spent in the sleeper berth of a moving truck in California.[3] ECF No. 72-1 at 6-7.

Recognizing that Woolfson's errors are indefensible, Plaintiff does not attempt to do so. Instead, Plaintiff ignores the assignment he actually gave his experts and claims, for the first time in the Joint Memorandum, that Woolfson did not determine

---

[3] ECF No. 72-1 explains that these errors include (1) allotting more that 24-hours' worth of damages to drivers in a single day, (2) failing to exclude excessively long sleeper berth times that would have violated federal regulations despite testifying that he had done exactly that, and (3) attributing wildly varying sleeper berth times for the same trip. *See* ECF No. 72-1 at 19-20.

the amount of time spent in a moving truck but rather looked at driver logs to identify sleeper segments where there was *some* movement. Of course, this is not at all what Woolfson said he did. Ex. A, ¶ 29 ("Findings—employees marked sleeper while the tractor was in transit"); Ex. A at 16, n. 10 ("My analysis included only those sleeper segments where the truck *was experiencing* movement. . . ."); Ex. B, ¶ 38 (same). At his deposition, Woolfson similarly confirmed that his task was to determine how long individuals spent in the sleeper berth of a moving truck: " Q. You calculated the number of minutes that drivers spent in the sleeper berth of a truck moving in California, correct? A. I did." CRST Reply Ex. A, *Woolfson Tr.* at 52:19-53:6, 53:10-15, 65:13-17, 75:12-76:1. Because Plaintiff offered no defense of Woolfson's methodology or explanation for the patent errors in his analysis he has failed to demonstrate any basis on which to allow Woolfson to testify. *Cascade Yarns, Inc. v. Knitting Fever, Inc.,* 2012 WL 5194085, at *3 (W.D. Wash. Oct. 18, 2012); *Rojas v. Marko Zaninovich, Inc.,* 2011 WL 4375297, at *9 (E.D. Cal. Sept. 19, 2011).

### C. Woolfson's reliance on sleeper berth log entries without further analysis demonstrates why his analysis is unreliable.

Rather than defend the substance of Mr. Woolfson's "analysis," Plaintiff spends a large portion of his opposition complaining that CRST's argument "rests on the premise that [CRST] does not trust the accuracy of its own driver records." ECF No. 72-1 at 21. But the relevant question is whether Woolfson reliably analyzed data that would allow him to testify to the central premise of Plaintiff's claim. It is undisputed that Woolfson's analysis cannot be performed in a vacuum and, instead, must account for the factual particularities in a case. *Abarca v. Merck & Co., Inc.*, 2010 WL 4643642, at * 4 (E.D. Cal. Nov. 9, 2010).

Here, drivers are in charge of accurately populating their logs and, as a result, drivers have varying logging practices, including some who leave themselves logged into the sleeper berth for days at a time when they are on their own personal time. *See generally,* ECF No. 73-1 at 20-25 (describing varying logging practices of drivers).

Simply looking at driver logs provides the Court with no evidence on which the Court can base a finding that CRST controlled an individual during a given sleeper berth period. This is why Plaintiff himself acknowledges in his class certification motion that he must "demonstrate both sleeper berth time and truck movement" at the same time to establish class wide damages. ECF No. 73-1 at 33. Plaintiff has failed to demonstrate any basis on which to conclude that Woolfson has to qualifications to analyze the data he looked at or that the results of that analysis are reliable. And because Petersen relies wholly on Woolfson's analysis to calculate the alleged class wide damages, the Court must preclude him from testifying as well.

## II. CONCLUSION

For the reasons stated above, the CRST requests that the Court exclude the testimony of Woolfson and Petersen.

Dated: December 23, 2019

**SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.**

By: */s/ Charles Andrewscavage*
Charles Andrewscavage
Attorney for Defendant, CRST Expedited, Inc.

4826-0600-6191, v. 9
4826-0600-6191, v. 9