Adam Blair Corren, SBN: 183067
Spencer D. Sinclair, SBN: 294340
LAW OFFICES OF CORREN & CORREN
5345 N. El Dorado, Suite 7
Stockton, CA 95207
Telephone: (209) 478-2621
Facsimile: (209) 478-3038
acorren@correnlaw.com
ssinclair@correnlaw.com

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **CHRISTOPHER DUEKER, on behalf of himself and all persons similarly situated,**<br><br>Plaintiffs,<br><br>vs.<br><br>**CRST EXPEDITED INC., and DOES 1 through 50, inclusive,**<br><br>Defendants. | **Case No. 2:18-cv-08751 FMO (FFMx)**<br><br>**PLAINTIFFS' SUPPLEMENTAL BRIEF IN SUPPORT OF PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |

# I. INTRODUCTION

This is a California wage and hour class action brought by Plaintiff Christopher Dueker against Defendant CRST Expedited Inc., involving a Class of more than 5,500 California truck drivers who have worked for Defendant from December 27, 2013 to the present. Plaintiffs request certification of this Class of California drivers who were uniformly: 1) not compensated the California minimum wage for their logged sleeper berth shift segment time within the territorial boundaries of California during which there was some truck movement; 2) were not provided accurate itemized wage statements with the actual number of hours worked, among other things, as required by California law; 3) were not paid all wages due at the conclusion of their employment as required by California law; and 4) were not separately compensated for their rest breaks as required by California law.

Plaintiffs submit this supplemental brief to 1) address Defendant's misleading commonality argument regarding Plaintiffs' minimum wage sleeper berth time claim; 2) clarify the relief requested pursuant to Plaintiffs' rest break claim; and 3) to address Defendant's evidentiary objections.

# II. LEGAL ANALYSIS

**A.** **The Minimum Wage Claim Satisfies Commonality & Predominance Tests.**

As a preliminary matter, Defendant's suggestion that individualized issues predominate regarding Defendant's level of control over Class Members is simply an inappropriate attempt to transform this class certification motion into a motion for summary judgment and/or make an inappropriate damages argument. Nevertheless, as Plaintiffs intend to prove at summary judgment, Defendant commonly exercised control over the Class Members while they were commonly confined to their truck's sleeper berth.

///
///
///

Law Offices of Corren & Corren
5345 N. El Dorado, Suite 7
Stockton, CA 95207
(209) 478-2621

−2−
Plaintiffs' Supplemental Brief In Support of Motion for Class Certification

### 1. **Drivers Are Commonly Controlled During Sleeper Berth Time.**

Despite arguing something entirely different in this herein Motion, in Defendant's Amended Responses to Plaintiffs' Interrogatories, Defendant admits its Class Member drivers were commonly **"subject to the control of Defendant"** during sleeper berth time.

> State how Plaintiff and the Class Members were compensated for time where the employee was **subject to the control of Defendant**, but not physically driving or operating the truck, including time spent performing all of the following tasks … 13) **sleeper berth time**
>
> …
>
> CRST compensates drivers for completing delivery of loads. To complete a delivery, **drivers must complete the tasks set forth in (1)-(15) set forth above, [including sleeper berth time, which was identified as (13)].**

*[Ex. 52 to Supplemental Appendix ("SA"), p. 890 (Amended Responses to Int. No. 1)[1]]*

Further, Defendant's Driver Managers have clearly communicated that when Class Member drivers are not logged in as driving or on duty, Defendant requires the drivers to be controlled and confined to the sleeper berth. *[Ex. 12, p. 96, 98, 102 & Ex. 46 to SA, p. 860-862 (Davis Depo. 17:19-21, 21:21-25, 23:12-24:2, 45:5-9, 68:9-13); Ex. 13, p. 108-109 & Ex. 48 to SA, p. 871 (Haffenden Depo. 12:9-13:16, 66:7-12); Ex. 49 to SA, p. 876 (Holzer Depo. 26:8-15); Ex. 15, p. 123-124 (Marburger Depo. 30:8-13, 30:24-31:1); Ex. 51 to SA, p. 885-887 (Porter Depo. 33:24-25, 54:10-19, 54:25-55:8); Ex. 20, p. 160 (Smith Depo. 31:6-10); Ex. 4, p. 16 (Brueck Decl. ¶4); Ex. 5, p. 21 (Gannon Decl. ¶4)]* Pursuant to Defendant's own uniform policies, Class Member drivers are required to be in the truck while logged in as sleeper berth. *[Ex. 48 to SA, p. 870 (Haffenden Depo. 15:13-15); Ex. 45 to SA, p. 855 (Chapman Depo. 25:5-9); Ex. 46 to SA, p. 859 (Davis Depo. 22:2-5); Ex. 49 to SA, p. 877-876 (Holzer Depo. 25:25-26:3); Ex. 50 to SA, p. 880 (Marburger Depo. 24:6-14); Ex. 51 to SA, p. 886-887 (Porter Depo. 54:25-55:8);

---

[1] Unless otherwise noted, all evidentiary citations are to the Appendix of Evidence to Joint Brief Re: Plaintiff's Motion for Class Certification.

Law Offices of Corren & Corren
5345 N. El Dorado, Suite 7
Stockton, CA 95207
(209) 478-2621

− 3 −
Plaintiffs' Supplemental Brief In Support of Motion for Class Certification

*Ex. 24, pp. 196-197 (Driver Handbook); Ex. 25, p. 201 (Safety & Operations Handbook)]* Consequently, even when their truck is stationary, Class Member drivers are commonly required by Defendant to be physically confined to the sleeper berth when their driver logs indicate sleeper berth time.

And although Defendant might try to suggest its Plaintiff drivers are arguably free to engage in personal activities while in the sleeper berth, Plaintiffs are uniformly confined to the truck and are always extremely limited in the types of alleged personal activities they might be allowed to engage while commonly confined to the very small sleeper berth space inside the truck cab. *[Ex. 50 to SA, p. 880-881 (Marburger Depo. 24:17-25:24)* – Sleeper berth consists of a bunk bed, cabinetry, and refrigerator that is within the cab of the truck, and the bunk is approximately three (3) feet from the driver's seat.*]*

In fact, when Courts are evaluating whether an employer exercised sufficient control for the time to be considered compensable, they look to whether the time is primarily spent for the benefit of the employer. (see *Gomez v. Lincare Inc.* (2013) 173 Cal.App.4th 508, 523)

Here, the evidence demonstrates that sleeper berth time is always spent primarily for the benefit of Defendant. By commonly requiring the Class Member team drivers to take their sleeper berth time confined to the truck, Defendant is able to deliver loads more quickly as one (1) driver can be driving or on duty at all times. *[Ex. 23, p. 190 (D's SMF #9); Ex. 15, p. 120-121 (Marburger Depo. 10:20-11:16); Ex. 13, p. 108-109 & Ex. 48 to SA, p. 871 (Haffenden Depo. 12:9-13:16, 66:7-12); Ex. 10, p. 82-83 (Brueck Depo. 12:14-13:3); Ex. 12, p. 101 (Davis Depo. 44:1-10)]* And by commonly requiring sleeper berth to be logged in the truck, Defendant can always ensure trucks are prepared to move at a moment's notice. For example, if a driver was instead asleep in a motel and a load became available, the other driver would not be able to begin driving until the driver in the motel woke up, checked out, and was ready to leave.

Q. And why do you want the co-driver to be in the sleeper berth

> thirty minutes before the other driver is ready to start?
> A. So he can be asleep when they start off as opposed to trying to fall asleep with all the activity that is going on.

*[Ex. 48 to SA, p. 871 (Haffenden Depo. 66:7-12)]*

This is also evidenced by Defendant's Safety Handbook which uniformly instructs drivers to establish "a specific 12-hour clock for each driver," to "create a work/sleep pattern." *[Ex. 25, p. 202 (Safety & Operations Handbook)]*

> And you also need to make sure that you're keeping your sleep patterns because at all times one of you should be in the sleeper berth.

*[Ex. 12, p. 96 (Davis Depo. 17:19-21)]*

> Q. You said you had a maximum of 14 hours, your 14 hour clock started. At the end of the 14 hours, before you could drive again, what would you have to do?
> A. I believe the requirement was you had to be in the sleeper berth for 10 hours.

*[Ex. 47 to SA, p. 866 (Dueker Depo. 88:19-23)]*

> Q. And it is after the 14-hour window that a driver then needs to have sleeper berth time of 10 hours that you talked about?
> A. Correct

*[Ex. 16, p. 123-124 (Marburger Depo. 30:24-31:2)]*

> Q. Okay.
> A. Now if I just got through driving, I have to be logged off sleeper berth. I have to be. There's no – It's not either or. I can't do either or. If I just got through driving 11 hours, I have to be logged off sleeper berth.

*[Ex. 44 to SA, p. 850-851 (Andree Depo. 78:24-79:4)]*

Lastly, the United States District Court for the District of Massachusetts recently held that under the Fair Labor Standards Act, Defendant commonly controlled and was required to pay drivers for sleeper berth time. (*Montoya v. CRST Expedited Inc.* (D. Mass Sept. 6, 2019) 2019 WL 4230892 *18-20) (The Court had previously granted certification of a class of employee drivers.) California law has also been held to be

more protective of employees than federal law. (*Troester v. Starbucks Corp.,* (2018) 5 Cal. 5th 829, 836)

Accordingly, this Court should reach the same conclusion and grant Plaintiffs' Motion for Class Certification.

## 2. **Defendant Exercises Common Control When Trucks Are Moving.**

To the extent Defendant attempts to argue that there are individualized issues regarding Defendant's control of sleeper berth time when trucks are stationary, Class Members are certainly subject to Defendant's common control during sleeper berth time when their truck is in motion.

Plaintiffs' time spent physically confined to the sleeper berth when their truck is moving is unarguably subject to Defendant's common control. The undisputed fact that drivers cannot physically leave the truck renders such time always controlled by the Defendant, regardless of what specific inside the truck activities Plaintiffs might be able to perform. **[Ex. 23, p. 190 (D's SMF #9); Ex. 15, p. 120-121 (Marburger Depo. 10:20-11:16); Ex. 13, p. 108-109 (Haffenden Depo. 12:9-13:16); Ex. 10, p. 81-82 (Brueck Depo. 12:14-13:3); Ex. 12, p. 101 (Davis Depo. 44:1-10)]**

Plus, for safety reasons, when the truck is in motion, Defendant commonly instructs drivers to remain strapped in to the bunk – meaning they should not even be standing up in the truck, and resulting in a greater degree of common control on the part of Defendant. **[Ex. 53 to SA, p. 903 (D's Message to Drivers)]**

Accordingly, Class Members are subject to Defendant's common control and common questions predominate for time spent in the sleeper berth while the truck is in motion.

## 3. **Defendant's Records Commonly Allow For Damages Calculations.**

Despite arguing its only time records are inaccurate, the Defendant agrees that Plaintiffs' experts were able to commonly analyze and calculate damages using Defendant's driver log records. More specifically, Defendant's own expert, Charles Platt, agreed Plaintiff's expert, Aaron Woolfson, was able to do the following:

1) Analyze the Defendant driver logs to uniformly determine when Class Members were logged as sleeper berth in California;

2) Analyze the movement of the trucks to commonly determine if the trucks moved when Class Members were logged as sleeper berth in California; and

3) Ultimately then commonly calculate when Class Members were logged as sleeper berth and there was some truck movement in California.

*[Ex. G to Appendix Re: D's MIL (Platt Depo. 31:18-22; 28:22 to 29:3; 41:17-20; 64:11-15)]*

Consequently, and as more specifically detailed in Plaintiffs' Opposition to Defendant's Motion in Limine to exclude Plaintiffs' experts from testifying as to damages, Defendant's only time records have allowed Plaintiffs to commonly analyze and calculate when Class Members were logged as sleeper berth while their trucks were moving in California.

### 4. **Defendant Failed To Separately Compensate Drivers For Sleeper Berth Time.**

Contrary to Defendant's suggestion, Class Members are not required to identify specific hours in which their compensation arguably fell below the minimum wage. To the absolute contrary, California law is clear that employers must compensate employees the minimum wage for all hours worked, including all non-productive time.

As the drivers are compensated on a piece/per mile rate basis, they must be paid for all non-productive sleeper berth time as that time does not directly relate to the piece rate activity of truck driving. (*Gonzalez v. Downtown LA Motors, LP* (2013) 215 Cal.4th 36, 48-49; Cal. Labor Code section 226.2)

(a) For employees compensated on a piece-rate basis during a pay period, the following shall apply for that pay period:

(1) Employees shall be compensated for rest and recovery periods and other nonproductive time **separate** from any piece-rate compensation.


(Cal. Lab. Code section 226.2(a))

Not only does *Vaquero* [*v. Stoneledge Furniture LLC* (2017) 9 Cal.App.5th 98, 110] indict Defendants' compensation structure generally, it also suggests that Plaintiff's minimum wage claim is susceptible to class wide resolution. This is because Plaintiff must only prove that Defendants' per mile pay scale does not adequately compensate Class Members for all the tasks they perform. Plaintiff will not need to prove that any individual employee was ever paid less than minimum wage in a given hour, only that Defendants' uniform policy denied compensation for tasks that require compensation. **The only individual inquiries necessary will concern the exact amount of non-compensated work performed by each Class Member, and will thus relate only damages, and not liability.** See *Leyva v. Medline Indus. Inc.*, 716 F.3d 510, 513-514 (9th Cir. 2013) ("[T]he amount of damages is invariably an individual question and does not defeat class action treatment.").

Several courts in this Circuit have granted certification for wage claims like Plaintiff's, brought by piecemeal employees whose employers did not separately compensate for nonproductive work time. *See e.g., Ridgeway v. Wal-Mart Stores Inc.*, No. C-08-05221-SI, 2014 WL 4477662 (N.D. Cal. September 2014); *Taylor v. FedEx Freight, Inc.*, No. 13-CV-1137-LJO-BAM, 2015 WL 2358248 (E.D. Cal. May 15, 2015) (certifying class because plaintiff's theory that **"Defendant's mileage pay plan systematically [failed] to separately compensate employees for non-driving activities did not require "identify[ing] specific hours that were not compensated below minimum wage for each Class Member")**; *Mendez v. R+L Carriers, Inc.*, No. C-11-2478-CW, 2012 WL 5868973 (N.D. Cal. November 19, 2012)

(*Ayala v. U.S Xpress Enterprises, Inc.* (C.D. Cal. 2017) 2017 WL 3328087, at *8)

**B.      Certification of All Claims For Liability Purposes Is Proper.**

As to all claims, including the rest break claim, Plaintiffs seek to have Defendant's liability determined pursuant to Federal Rule of Civil Procedure section 23(c)(4).   Although Plaintiffs originally labeled the rest break relief sought as declaratory and injunctive relief, Plaintiffs clearly are seeking a determination that "Defendant has violated California's minimum wage, wage statement, and rest break

laws." (Joint Brief 45:23-24)  Accordingly, standing or the fact that Defendant no longer employs the Class Representative, is irrelevant and certification should be granted pursuant to Rule 23(c)(4) to establish Defendant's liability on all claims. (see *Petersen v. Costco Wholesale Co.*, 312 F.R.D. 565, 583–84 (C.D. Cal. 2016))

C.      **Defendant's Evidentiary Objections.**

    1.      **The Court May Rely Upon Declarations & Deposition Testimony From Separate Proceedings.**

Regardless of whether the Court takes judicial notice of deposition testimony and declarations from prior proceedings, the Court may consider such evidence in ruling upon this motion for class certification and future motions/proceedings, including a summary judgment motion. (*Gulf USA Corp. v. Federal Insurance Company* (9th Cir. 2001) 259 F.3d 1049, 1056 "Sworn deposition testimony may be used by or against a party on summary judgment regardless of whether the testimony was taken in a separate proceeding.")

    2.      **Plaintiffs' Experts.**

While the Defendant argues its own time records are unreliable, based on the reasons, evidence, and legal authority detailed in Plaintiffs' Opposition to Defendant's Motion In Limine, both Dr. Petersen and Mr. Woolfson are expertly qualified and reliable.  Their testimony should not be excluded, and Defendant's Motion In Limine should be denied.

    3.      **Plaintiffs Are Not Required to Take a Rule 30(b)(6) Deposition.**

Defendant has suggested that the failure to take a Rule 30(b)(6) deposition somehow renders useless the overwhelming evidence against Defendant.  However, there is no rule or requirement that a party take such a deposition.  Plaintiffs deposed the individuals Defendant identified throughout discovery; utilized evidence Defendant themselves relied upon in prior proceedings; and offered Defendant's own uniform records, policies, and discovery responses in support of this motion.

Interestingly, Defendant has not offered any declarations or evidence

contradicting any of Plaintiffs' proffered evidence.  Accordingly, Defendant's overly generalized objection to Plaintiffs' evidence should be disregarded.

### III. CONCLUSION

Based on the foregoing reasons and legal authority articulated in both the Joint and Supplemental Briefs, Plaintiffs' Motion for Class Certification should be granted.

DATED: 12/26/19                              LAW OFFICES OF CORREN & CORREN

                                                        _*Spencer D. Sinclair*_____
                                                        SPENCER D. SINCLAIR
                                                        Attorney for Plaintiffs