1  Christopher C. McNatt, Jr. (SBN 174559)
   cmcnatt@scopelitis.com
2  SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, LLP
   2 North Lake Avenue, Suite 560
3  Pasadena, CA 91101
   P: 626-795-4700
4  F: 626-795-4790

5  James H. Hanson (Admitted *Pro Hac Vice*)
   jhanson@scopelitis.com
6  R. Jay Taylor, Jr. (Admitted *Pro Hac Vice*)
   jtaylor@scopelitis.com
7  Elizabeth M. Bolka (Admitted *Pro Hac Vice*)
   ebolka@scopelitis.com
8  SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
   10 West Market Street, Suite 1400
9  Indianapolis, IN 46204
   P: 317-637-1777
10 F: 317-687-2414

11 Charles Andrewscavage (Admitted *Pro Hac Vice*)
   candrewscavage@scopelitis.com
12 Jared S. Kramer (Admitted *Pro Hac Vice*)
   jskramer@scopelitis.com
13 SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
   30 West Monroe Street, Suite 600
14 Chicago, IL 60603
   P: 312-255-7200
15 F: 312-422-1224

16 Attorneys for Defendant,
   CRST EXPEDITED, INC.

**ADDITIONAL COUNSEL LISTED ON NEXT PAGE**

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| CHRISTOPHER DUEKER, on behalf of himself and all persons similarly situated,<br><br>Plaintiff,<br><br>vs.<br><br>CRST EXPEDITED, INC., and DOES 1 through 50, inclusive,<br><br>Defendants. | Case No.: 2:18-cv-08751-FMO-FFM<br><br>**DEFENDANT'S MEMORANDUM RE: CONSOLIDATION**<br><br>Hearing Date: March 12, 2020<br>Time:           10:00 a.m.<br>Courtroom:  6D<br>Judge:          Hon. Fernando M. Olguin |

1  Adam C. Smedstad (SBN 303591)
   asmedstad@scopelitis.com
2  SCOPELITIS, GARVIN, LIGHT, HANSON & FEARY, P.C.
   3241 West McGraw Street, Suite 301F
3  Seattle, WA 98199
   P: 206-888-6192
4  F: 206-299-9375

5  Attorney for Defendant,
   CRST EXPEDITED, INC.
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

Defendant, CRST Expedited, Inc. ("CRST"), respectfully submits this memorandum in response to the Court's Order to Show Cause.[1] ECF No. 81.

## I. INTRODUCTION

The Court should not consolidate the *Markson* and *Dueker* cases. The cases involve different legal claims, different factual predicates underlying the claims, and different parties. In *Markson*, the plaintiffs bring federal and state antitrust claims against five motor carriers and state law claims against CRST involving the costs of CRST's driver training program. In *Dueker*, Plaintiff brings minimum wage claims related to time drivers spend in the sleeper berth, rest break claims, and derivative wage statement and waiting time penalty claims. Consolidation will hinder, rather than promote, judicial efficiency by requiring the parties to litigate two separate cases in one action. As a result, consolidation is inappropriate under Federal Rule of Civil Procedure 42.

However, if the Court believes consolidation is necessary, CRST asks the Court to sever Claims for Relief 3-7 brought against CRST in *Markson* and consolidate those claims with *Dueker*. This will allow all of the state law wage and hour and contract claims to proceed against CRST separate and apart from the factually distinct antitrust claims. Finally, CRST requests *Tapia* not be consolidated because Tapia has agreed to dismiss his class claims and pursue his claims individually.

---

[1] On January 14, 2020, this Court issued a Civil Minute Order ordering counsel to meet and confer regarding whether the Court should consolidate the cases *Markson, et al. v. CRST International, Inc., et al.*, 17-cv-1261 ("Markson"), *Tapia v. CRST Expedited, Inc., et al.*, 19-cv-1665 ("Tapia"), and *Dueker v. CRST Expedited, Inc.*, 18-cv-8751 ("Dueker"). Counsel for all parties in *Markson*, *Tapia*, and *Dueker* held an initial meet and confer on January 21, 2020, and counsel for Markson, Dueker, and CRST held a subsequent meet and confer on January 24, 2020. During the January 24, 2020 meet and confer, counsel for Tapia agreed to dismiss the class claims alleged in *Tapia*. During subsequent meet and confers, counsel for the parties in *Markson* and *Dueker* were unable to come to a resolution related to whether the Court should consolidate the *Markson* and *Dueker* cases.

1

## II. BACKGROUND ON FACTUAL AND LEGAL ISSUES

### A. The *Markson* claims and procedural posture.

Prior to July 26, 2018, *Markson* was a California state wage and hour case against CRST. On July 26, 2018, the *Markson* plaintiffs filed a third amended complaint that added several defendants, allegations of federal and state antitrust violations against all defendants, and additional state wage and hour claims against CRST. *See Markson*, ECF No. 55. Currently, the claims in *Markson* are easily divided into two broad categories: (1) antitrust claims brought under California state and federal law (*Markson*, ECF No. 55, Claims for Relief 1 and 2) against all defendants ("antitrust claims"), and (2) California state wage and hour and contract claims brought solely against CRST related to the costs of CRST's driver training program (*Markson*, ECF No. 55, Claims for Relief 3-7).

In the antitrust claims, the four plaintiffs in *Markson* allege that five defendants (CRST, C.R. England, Inc., Western Express, Inc., Schneider National Carriers, Inc., and Southern Refrigerated Transport, Inc.) entered into a "no-poaching" conspiracy whereby they agreed not to hire drivers who were "under contract" with another defendant. According to the complaint, a driver could be under contract in two scenarios: (i) the driver attended another defendant's driver training school for free in exchange for driving for that defendant for a certain period of time or (ii) the driver was offered reimbursement by a defendant for driver training costs she incurred from a third-party school in exchange for an agreement to drive for that defendant for a period of time (i.e., "under contract" drivers). The key factual and legal issues related to the antitrust claims revolve around whether the defendants entered into any unlawful agreement or conspiracy to restrict competition among the "under contract" drivers.

Unlike the antitrust claims, which the *Markson* Plaintiffs bring against numerous defendants, the state law wage and hour claims are asserted only against CRST. In the state wage and hour claims, the *Markson* Plaintiffs allege that (1) CRST's driver training and driver employment contracts contain unreasonable repayment provisions;

2

(2) CRST failed to reimburse "under contract" drivers for business expenses incurred during the driver training program, including the cost of tuition for the driver training program and costs associated with administrative fees, DOT physicals, and drug screenings; and (3) as a result CRST failed to pay drivers all wages due upon termination. The key issues which the Court must determine in the state wage and hour claims include whether a provision in CRST's pre-employment driver training agreement and driver employment contract is enforceable, the reasonable cost of the driver training program, and what expenses an individual can legally incur for attending the driver training program. Notably, the *Markson* complaint contains no allegations related to minimum wage compensation, meal and rest breaks, or inaccurate wage statements.

In *Markson*, the plaintiffs propose different class definitions for the antitrust claims and the wage and hour claims. The antitrust class definition includes drivers from all defendants while the two state law wage and hour subclass definitions focus solely on drivers who contracted with CRST:

- ***Antitrust Class Definition*:** "All current or former California residents "under contract" as motor vehicle carrier drivers with CRST International, Inc., CRST Expedited, Inc.; C.R. England, Inc., Western Express, Inc., Schneider National Carriers, Inc., or Southern Refrigerated Transport, Inc., at any time from May 15, 2013 to the present." *Markson*, ECF No. 55, ¶ 131.

- ***DOT Physical and Drug Screening Subclass*:** "all persons who signed a Pre-Employment Driver Training Agreement or Driver Employment Contract with Defendant CRST Expedited, Inc. and who participated in CRST Expedited, Inc.'s Driver Training Program in California and were charged for their DOT physical and drug screening tests between May 12, 2013 to present." *Id.*

- ***Driver Employment Contract Subclass***: "all persons who signed a Driver Employment Contract with Defendant CRST Expedited, Inc. and who participated in CRST Expedited, Inc.'s Driver Training Program in California but failed to complete

3

the contractually-required 10-month employment term with CRST Expedited, Inc. and were charged $6,500." *Id.*

The parties are currently in the middle of discovery regarding these claims, including substantial ESI discovery primarily related to the antitrust claims. Document discovery related to the state law wage and hour claims is largely separate (and severable from) document discovery regarding the antitrust claims. The parties have yet to brief class certification.

### B. The *Dueker* claims and procedural posture.

On December 27, 2017, Plaintiff Christopher Dueker filed his class action complaint against CRST Expedited in the Superior Court of the State of California for the County of San Bernardino. Dueker initially asserted 10 causes of action for which he sought class-wide recovery: (i) failure to pay the minimum wage for non-driving activities; (ii) nonpayment of wages; (iii) failure to provide accurate itemized wage statements; (iv) unlawful deductions from wages; (v) failure to reimburse drivers for business expenses related to driving under California Labor Code § 2802; (vi) failure to provide rest breaks; (vii) failure to pay all wages due at termination; (viii) unlawful business practices; (ix) unfair business practices; and (x) conversion. *See Dueker*, ECF No. 20, ¶¶ 37-84. Each of these claims focuses on how CRST Expedited compensates its drivers. Subsequently, Dueker voluntarily dismissed his claims for nonpayment of wages, unlawful deductions for wages, failure to reimburse business expenses under California Labor Code § 2802, and conversion.

In his motion for class certification, Dueker confirmed that he is only seeking class-wide recovery on the following issues: (i) failure to pay drivers at least the minimum wage for time spent in the sleeper berth of a moving truck in California; (ii) failure to provide accurate itemized wage statements; (iii) failure to pay all wages due at termination; (iv) a declaration that CRST Expedited failed to separately compensate drivers for rest breaks as required by California law; and (v) a finding that, as a result of the previously-enumerated issues, CRST Expedited violated California's

unfair competition law. *Dueker*, ECF No. 73-1.

Dueker proposes the following class and subclasses:

- ***Overall Class Definition***: "All California residents employed by Defendant as a truck driver at any time during the Class Period of December 27, 2013 through the date of trial;"

- ***Minimum Wage Subclass***: "All California residents employed by Defendant as a truck driver during the Class Period who logged sleeper berth shift segment time within the territorial boundaries of California during which there was some truck movement";

- ***Waiting Time Penalty Subclass***: "All Minimum Wage Subclass Members who have separated from their employment with Defendant."

*Id.* at 28. Dueker only seeks to recover on the remainder of his claims—including alleged amounts owed for non-driving time other than time spent in a sleeper berth of a moving truck—in his individual capacity. None of Dueker's claims involve CRST's driver training program or reimbursement for business expenses related to CRST's driver training program that is present in *Markson*. The only overlap in claims between *Dueker* and *Markson* is that both contain allegations regarding failure to pay all wages at termination in violation of California Labor Code §§ 201-203 ("Sections 201-203").

From a procedural perspective, *Dueker* is also a more mature case than *Markson*. The parties in *Dueker* have fully completed discovery—including substantial expert discovery—fully briefed and submitted motions on class certification, fully briefed and submitted a *Daubert* motion as to Plaintiff's proposed experts, and have exchanged opening summary judgment briefs.

**C.    Tapia will only pursue his claims on an individual basis.**

Plaintiff Joseph Tapia filed his complaint on July 16, 2019 in the Superior Court of the State of California for the County of San Bernardino. Tapia alleges CRST employed him as a trainee truck driver in California. *Tapia*, ECF No. 1-1, ¶¶ 3, 7. Tapia claims that CRST unlawfully charges driver trainees several thousand dollars in

"tuition" if they fail to complete this training program, *id.*, ¶¶ 8-11, 18, 50, and he seeks reimbursement under California Labor Code § 2802 of "tuition and associated costs for driver training and/or orientation." *Id.*, ¶¶ 10, 69. Tapia has agreed through the meet and confer process that he will no longer pursue his claims on behalf of any class. His case should therefore not be consolidated with any other case.

**III. ARGUMENT**

    **A. The Court should not consolidate *Markson* and *Dueker*.**

Federal Rule of Civil Procedure 42(a) provides that "[i]f actions before the court involve a common question of law or fact, the court may: (1) join for hearing or trial any or all matters at issue in the actions; (2) consolidate the actions; or (3) issue any other orders to avoid unnecessary cost or delay." Fed. R. Civ. P. 42(a). "To determine whether to consolidate, a court weighs the interest of judicial convenience against the potential for delay, confusion and prejudice caused by consolidation." *Whelan v. Miles Indus.*, 2013 WL 12174135, at *2 (N.D. Cal. Jan. 3, 2013) (citations omitted). In order for consolidation to be appropriate, the party requesting consolidation must demonstrate "that consolidation is appropriate, including showing the benefits outweigh any prejudice caused to the opponent of consolidation." *Dodaro v. Standard Pac. Corp.*, 2009 WL 10673229, at *3 (C.D. Cal. Nov. 16, 2009).

Consolidating *Dueker* and *Markson*, as currently plead, will not serve judicial convenience; rather, it will promote confusion, delay ultimate resolution of the matters, and prejudice CRST (and all *Markson* defendants). This is because *Dueker* and *Markson*—and even the two categories of claims within *Markson* itself—share no factual predicate other than having CRST as a defendant. For example, the *Markson* antitrust claims apply to *all defendants*, focus on whether there was an alleged agreement among all *Markson* defendants not to poach under-contract drivers and, if there was such an agreement, whether the agreement could affect the market for driver wages. In contrast, the *Markson* state law and hour claims in the *Markson* matter only apply to CRST and focus on resolving the question of whether a provision in CRST's

6

driver employment contract is enforceable, what the reasonable cost of the driver training program is, and what expenses an individual can legally incur for attending the driver training program. None of these factual issues is relevant to *any* issue in the antitrust claims. In short, the *Markson* matter has two distinct cases proceeding under the same caption.

The claims in *Dueker* also share no factual or legal overlap with either *Markson's* antitrust claims or *Markson's* state law claims.[2] The claims in *Dueker* focus on factual and legal issues regarding whether CRST compensates its drivers in compliance with California's wage and hour laws. Importantly, *Dueker* does not involve *any* claim related to CRST's driver training program, the market for driver wages, or no-poach agreements among motor carriers—the focus of the claims in *Markson*. Courts routinely find that, when the factual predicates of claims are different—even when the legal causes of action are identical—consolidation is inappropriate. *Dodaro*, 2009 WL 10673229, at *3 (denying motion to consolidate because "while the claims in the eight complaints are identical, the underlying distinct facts may give rise to disparate legal issues"). And when—as here—cases contain substantially different causes of action, courts decline to consolidate those actions. *U.S. Rubber Recycling, Inc. v. Encore Int'l, Inc.*, 2011 WL 311014, at *13 (C.D. Cal. Jan. 7, 2011).

---

[2] Plaintiffs in *Markson* and *Dueker* both allege violations of California Labor Code §§ 201-203. However, this alone does not require consolidation. *Dodaro*, 2009 WL 10673229, at *3 (C.D. Cal. Nov. 16, 2009) ("The existence of common issues, while a prerequisite to consolidation, does not compel consolidation."). The distinct factual and legal nature of all claims except for the claims under Sections 201-203 stifles any concern the *Markson* Plaintiffs have raised regarding *res judicata* in the event one action is resolved prior to the other. *Chalian v. CVS Pharmacy, Inc.*, 2018 WL 6016163, at *2 (C.D. Cal. Mar. 22, 2018) (finding *res judicata* did not apply to Sections 201-203 claims and other wage claims because factual predicate of case (failure to pay pharmacists for time spent on mandatory training activities) was distinct from factual predicate of other cases (which were based on practice of not paying floater pharmacists for time spent travelling between stores and not reimbursing for travel expense and not paying overtime to pharmacists who worked seven days in a row).

7

Consolidation is also inappropriate for a second reason—the unique factual and legal issues in each case make judicial efficiency, and a substantial overlap of evidence or witnesses, unlikely. For example, in conducting discovery in *Dueker*, Plaintiff's counsel deposed driver managers, individuals in CRST's payroll department, and certain individuals involved in operations to assess whether time drivers spend in the sleeper berth of a moving vehicle in California is compensable time. It is unlikely that the plaintiffs in *Markson* will need any of this evidence to resolve their state law claims, and it is a certainty that this evidence is irrelevant to the antitrust claims.

Finally, the Court should not consolidate *Dueker* with *Markson* because doing so would prejudice CRST. *Dueker* is at a procedurally different posture. The parties have already completed discovery, completed briefing on class certification, and exchanged initial briefs regarding summary judgment. In contrast, *Markson* is in the midst of discovery, the parties have yet to brief class certification, the hearing for which will not occur until March 1, 2021, and the case already involves two unique and unrelated sets of claims (of which the antitrust issues dominate). Consolidation will likely result in CRST having to redo substantial amounts of discovery, re-brief certification, and potentially revisit expert discovery. Additionally, consolidation will substantially delay the resolution of the *Dueker* case (and likely delay the resolution of the *Markson* case by adding additional complexity, evidence, witnesses, and issues). Each of these factors militate against consolidating *Dueker* and *Markson* in their current form. *Glass v. Intel Corp.*, 2007 WL 2265663, at *5 (D. Ariz. Aug. 6, 2007) ("[A] motion under Rule 42(a) may be denied ... if consolidation will cause delay in the processing of one or more of the individual cases" or "when one of the actions has proceeded further in the discovery process than the other.") (*quoting* 9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2383 (2006)); *U.S. Rubber Recycling, Inc.*, 2011 WL 311014, at *13 (same). CRST requests that the Court not consolidate the cases.

**B.** **If the Court determines consolidation is appropriate, it should sever the *Markson* state law wage and hour claims and consolidate those claims with *Dueker*.**

Federal Rule of Civil Procedure 21 grants the Court broad discretion to "sever any claim against a party." Fed. R. Civ. P. 21; *Bodri v. Gopro, Inc.*, 2016 WL 1718217, at *1 (N.D. Cal. Apr. 28, 2016). Severance under Rule 21 creates two separate and independent actions which proceed as separate suits and is appropriate where "the claims are discrete and separate." *Oyarzo v. Tuolumne Fire Dist.*, 2013 WL 12304697, at *6-7 (E.D. Cal. Sept. 26, 2013).

In determining whether to sever claims under Rule 21,[3] courts generally consider (1) whether the claims arise out of the same transaction or occurrence; (2) whether the claims present some common questions of law or fact; (3) whether settlement of the claims or judicial economy would be facilitated; (4) whether prejudice would be avoided if severance were granted; and (5) whether different witnesses and documentary proof are required for the separate claims. *Oyarzo*, 2013 WL 12304697, at *7; *see Colors of India v. Nielsen*, 2018 WL 6430118, at *4 (C.D. Cal. Oct. 19, 2018).

Here, three reasons support the Court severing the *Markson* Claims for Relief 3-7 (the California state law wage and hour claims) from Claims for Relief 1-2 (the antitrust claims). First, for the reasons stated above, the California state law claims and the antitrust claims share no common questions of fact or law and do not arise out of the same event. *Coughlin v. Rogers,* 130 F.3d 1348, 1351 (9th Cir. 1997) (claims that are discrete, and involve different legal issues, standards, and procedures require individualized attention, and therefore do not involve common questions of law or fact).

---

[3] An alternative to severance under Rule 21 is bifurcation for trial under Rule 42(b). Bifurcation is appropriate "where claims are factually interlinked so that a separate trial may be appropriate, but final resolution of one claim affects the resolution of the other." *Oyarzo*, 2013 WL 12304697, at *7. Because final resolution of the antitrust claims will not affect resolution of the non-antitrust claims (or vice versa), severance, rather than bifurcation, is appropriate.

Second, the California state law claims and the antitrust claims share no overlapping witnesses or evidence. None of the non-CRST defendants to the antitrust claims have *any involvement* in the state law wage and hour claims, and the antitrust claims will involve different witnesses (including different experts) and documentary evidence (as made apparent by the substantial amount of ESI discovery being conducted related to the antitrust claims). Additionally, because the antitrust claims and the state law wage and hour claims are essentially two independent cases operating under the same caption, severance of the non-antitrust claims will help avoid confusion of the issues at trial. Finally, the plaintiffs in *Markson* will not be prejudiced through severance. The parties have yet to brief class certification, dispositive motions, or conduct any depositions. And while the parties have completed some discovery on the state law wage and hour claims, that discovery is easily separable.

To the extent that the Court concludes that some form of consolidation is appropriate because of the overlapping claims under Sections 201-203, CRST requests that the Court consolidate the severed *Markson* California state law claims with the *Dueker* claims. For the reasons stated above, CRST does not believe these cases are factually similar, but litigating all state law wage and hour claims in one action will be less prejudicial to CRST and cause less delay to the Court, and result in less confusion for the trier of fact, than litigating two sets of distinct state law wage and hour claims *and* antitrust claims involving multiple defendants in one action.

### IV.  CONCLUSION

For the reasons stated above, CRST requests that the Court not consolidate the *Markson*, *Dueker*, and *Tapia* cases. In the alternative, CRST requests the Court sever the state law Claims for Relief 3-7 from *Markson,* consolidate those claims with the claims in *Dueker,* and allow all of the non-antitrust state law claims to proceed together in a separate action. Alternatively, if the Court does not sever the *Markson* state law claims, it should bifurcate the *Markson* state law wage and hour claims from the antitrust claims.

| | |
|---|---|
| Dated: February 4, 2020 | Respectfully submitted,<br><br>*/s/ Charles Andrewscavage*<br>Charles Andrewscavage<br><br>Attorney for Defendant,<br>CRST Expedited, Inc. |

4834-8369-4002, v. 4

11