# EXHIBIT A

2020 WL 6821072
Only the Westlaw citation is currently available.
United States District Court, C.D. California.

Timothy Pavloff, et al.

v.

Cardinal Logistics Management Corp.

Case No. CV 20-00363 PA (KKx)
|
Filed 10/07/2020

**Attorneys and Law Firms**

Gabriela. Garcia, Deputy Clerk, Attorneys Present for Plaintiffs: None

Not Reported, Court Reporter, N/A, Tape No., Attorneys Present for Defendants: None

**Proceedings:** IN CHAMBERS - COURT ORDER

The Honorable PERCY ANDERSON, UNITED STATES DISTRICT JUDGE

*1 Before the Court is a Motion for Class Certification filed by plaintiffs Timothy Pavloff, Mark Beatty, Salvador Gonzalez, Anitra Hart, Leon Chapman, Fravell Duane Johnson, Felix Castaneda, Marcos Dominguez, Ricardo Flores, Elaine Frank, Chris Holloway, Victor Moran, Jorge Munoz, Joe Odette, Donald Mastrangello, and Hamed Rodriguez ("Plaintiffs"). (Dkt. No. 33 ("Mot.").) Defendant Cardinal Logistics Management Corp. ("Cardinal" or "Defendant") has filed an Opposition (Dkt. No. 38 ("Opp.")), and Plaintiffs have filed a Reply (Dkt. No. 42). Pursuant to Rule 78 of the Federal Rules of Civil Procedure and Local Rule 7-15, the Court finds this matter appropriate for decision without oral argument.

**I. Background**

Plaintiffs are employed as long-haul truck drivers for Cardinal. (Dkt. No. 28, FAC ¶ 1.) Plaintiffs allege that "for any given 24-hour shift, Department of Labor ('DOL') regulations prohibit Defendant from excluding more than eight (8) hours from compensation for the time that a driver spends in a truck's 'sleeper berth.' " (Id. ¶ 3 (citing 29 C.F.R. § 785.22(a).) Plaintiffs allege Cardinal "has a nationwide practice of deducting ten (10) hours of sleep time from its truck drivers' pay for [a] period in which they spent 24 hours or more on the road." (Id. ¶ 4.) According to the FAC, "[d]uring the time in the sleeper berth, drivers were subject to the control of the Defendant, had many responsibilities, and were otherwise working." (Id.) Despite this knowledge, "Defendant's compensation system did not pay drivers anything for this time spent in sleeper berths." (Id.)

In addition, Plaintiffs allege that "drivers who were assigned as 'helpers' were not paid for approximately one hour of time they spen[t] prior to their assigned shift waiting to leave the facility." (Id. ¶ 5.) Helpers were allegedly "instructed to log this as unpaid, sleeper berth time." (Id.) Helpers allegedly "continued to log additional time including the approximately 5 hours they spent leaving the state of California with another driver as unpaid, sleeper berth time." (Id.)

Plaintiffs also allege that "both California-based drivers and those that were from out of state but drove in California" were "not provided rest breaks within the first 3.5 hours of their shift." (Id. ¶ 6.) According to the FAC, "[w]hile some of these drivers may have taken a break later in the day, it was impossible to pull their 80 thousand-pound trucks over to take a break within the first 3.5 hours of their shift." (Id.)

Finally, Plaintiffs allege drivers were "required to use their own personal cell phones to regularly communicate with Cardinal throughout their routes," and that Plaintiffs "were not reimbursed for the cost of these cell phones." (Id. ¶ 7.)

Plaintiffs move the Court to certify two classes. Plaintiff seeks to represent the following:

**California Resident Class:** All California-based (resident) truck drivers or helpers (team driver 2) subject to the unlawful sleeper berth deductions or other California-based minimum wage violations as described herein within the United States at any time starting four years prior to the filing of the initial complaint until trial of this action.

*2 **Non-California Resident Class:** All non-California resident drivers or helpers (team driver 2) who performed work in California for at least one full day from 4 years prior to the filing of this Complaint to the present.

(Mot. at 1.)

Plaintiffs bring the following claims on behalf of the proposed classes: (1) failure to pay all wages due (on behalf of the

California Resident and Non-California Resident Classes), (2) failure to provide timely rest breaks (on behalf of the California Resident and Non-California Resident Classes), (3) failure to reimburse for necessary expenditures (on behalf of the California Resident Class), (4) failure to provide waiting time penalties (on behalf of the California Resident Class), (5) failure to provide accurate itemized wage statements (on behalf of the California Resident Class), and (6) violation of California's Unfair Competition Law (on behalf of the California Resident Class).

## II. Legal Standard

"The class action is 'an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only.' " Comcast Corp. v. Behrend, 569 U.S. 27, 33 (2013) (quoting Califano v. Yamasaki, 442 U.S. 682, 700–01 (1979)). "To come within the exception, a party seeking to maintain a class action 'must affirmatively demonstrate his compliance' with Rule 23." Id. (quoting Wal-Mart Stores, Inc. v. Dukes, 564 U.S. 338, 350 (2011)). The plaintiff's evidence need not be admissible, but it must be persuasive. Sail v. Corona Reg'l Med. Ctr., 889 F.3d 623, 634 (9th Cir. 2018).

To obtain class certification, a plaintiff must satisfy the four requirements of Federal Rule of Civil Procedure 23(a) and the requirements of one of the Rule 23(b) subdivisions. See Zinser v. Accufix Research Inst., Inc., 253 F.3d 1180, 1186 (9th Cir. 2001). Rule 23(a) requires the plaintiff to demonstrate that (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class. Fed. R. Civ. P. 23(a). To obtain class certification, "actual, not presumed, conformance with Rule 23(a) [is] ... indispensable." Gen. Tel. Co. v. Falcon, 457 U.S. 147, 160 (1982).

After satisfying Rule 23(a)'s prerequisites, the plaintiff must establish that the class meets the prerequisites of at least one of the three types of class actions set forth in Rule 23(b). Stearns v. Ticketmaster Corp., 655 F.3d 1013 (9th Cir. 2011). The provision at issue here is Rule 23(b)(3). This subsection requires the plaintiff to demonstrate that (1) common questions of law or fact predominate over any questions affecting only individual members and (2) class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3).

A district court must conduct a "rigorous analysis" to ensure Rule 23' s requirements are satisfied. Zinser, 253 F.3d at 1186. As the Ninth Circuit has explained, this rigorous analysis "does not mean that a district court must conduct a full-blown trial on the merits prior to certification. A district court's analysis will often, though not always, require looking behind the pleadings, even to issues overlapping with the merits of the underlying claims." Dukes v. Wal-Mart Stores, Inc., 603 F.3d 571, 581 (9th Cir. 2009), rev'd on other grounds, 564 U.S. 338 (2011). Thus, while courts are prohibited at the class certification stage from making determinations on the merits that do not overlap with the Rule 23 inquiry, they must determine that each requirement of Rule 23 is actually met to grant certification. Id. at 582. "Rule 23 provides district courts with broad discretion to determine whether a class should be certified ...." Armstrong v. Davis, 275 F.3d 849, 871 n.28 (9th Cir. 2001).

*3 Although neither the Ninth Circuit nor the Supreme Court has attached a standard of proof to Rule 23's requirements, many courts apply the preponderance of the evidence standard. See, e.g., Teamsters Local 445 Freight Div. Pension Fund v. Bombardier, Inc., 546 F.3d 196, 202 (2d Cir. 2008) ("Today, we ... hold that the preponderance of the evidence standard applies to evidence proffered to establish Rule 23's requirements."); In re Hydrogen Peroxide Antitrust Litig., 552 F.3d 305, 321–22 (3d Cir. 2008) ("Factual determinations supporting Rule 23 findings must be made by a preponderance of the evidence."). The Court finds that this is the appropriate burden of proof.

## III. Evidentiary Objections

Cardinal makes several evidentiary objections to Plaintiffs' declarations. (Dkt. No. 39.) Cardinal first argues Plaintiffs' declarations are "irrelevant because the entirety of the declaration[s] [are] talking about [ ] Cardinal Logistics, Inc." which is not a defendant in this action. In their Reply, Plaintiffs submit a declaration from a paralegal at Plaintiffs' law firm who states she inadvertently referred to Defendant as Cardinal Logistics, Inc. in the declarations, but was referring to Defendant. The Court finds this evidence sufficient to overrule Defendant's evidentiary objections on this point.

In addition, Cardinal makes several evidentiary objections to evidence Cardinal argues is inadmissible. "When conducting its 'rigorous analysis' into whether the Rule 23(a)

requirements are met, the district court need not dispense with the standards of admissibility entirely." Sail v. Corona Regional Medical Center, 909 F.3d 996, 1006 (9th Cir. 2018). "The court may consider whether plaintiff's proof is, or will likely lead to, admissible evidence." Id. "But admissibility must not be dispositive." Id. "Instead, an inquiry into the evidence's ultimate admissibility should go to the weight that evidence is given at the class certification stage." Id. (finding district court abused its discretion by declining to consider a declaration solely on the basis of inadmissibility). Thus, Cardinal's evidentiary objections are overruled in their entirety. Instead, the Court will consider the admissibility of Plaintiffs' evidence in deciding how much weight to give the evidence.

IV. **Analysis**

A. Rule 23(a)

Rule 23(a) establishes four prerequisites for class action litigation: (1) numerosity, (2) commonality, (3) typicality, and (4) adequacy of representation. See Eisen v. Carlisle & Jacquelin, 417 U.S. 156, 162–63 (1974).

1. **Numerosity**

A proposed class meets Rule 23(a)'s numerosity requirement where the class "is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The numerosity requirement is not tied to any fixed numerical threshold – it requires examination of the specific facts of each case." Rannis v. Recchia, 380 Fed. App'x 646, 651 (9th Cir. 2010) (noting that a 20-member class, though not precluded, would be a "jurisprudential rarity"). Numerosity may be satisfied "[w]here the exact size of the class is unknown but general knowledge and common sense indicate that it is large." Turcios v. Carma Labs., Inc., 296 F.R.D. 638, 645 (C.D. Cal 2014). However, the moving party must "still show some evidence of or reasonably estimate the number of class members. Mere speculation as to satisfaction of this numerosity requirement does not satisfy Rule 23(a)(1)." Derval v. Xaler, 19-cv-01881, 2020 WL 430781, at *2 (C.D. Cal. Jan. 28, 2020) (citing Siles v. ILGWU Nat'l Ret. Fund, 783 F.2d 923, 930 (9th Cir. 1986) (affirming denial of class certification where plaintiff offered no evidence as to the number of potential class members who suffered harm similar to plaintiff)).

*4 Here, Plaintiffs "estimate that the Non-California Resident Class consists of approximately 100 drivers." (Mot. at 6.) Plaintiffs also "estimate that the California Resident Class consists of approximately 200-300 drivers." (Id. (citing Decl. of M. Braun see also Decl. of T. Pavloff[1/] ¶ 21 ("Cardinal employs at least 100-200 drivers who are California residents."))); see also Decl. of T. Pavloff[2/] ¶ 19 ("Based on my experiences with the company and from my discussions with other drivers and management, I would ... estimate that at least 100 non-California based drivers travel to California for deliveries where they stay at least one day. I would estimate somewhere between 100-200 California-based drivers.")

The Court finds this evidence insufficient to show that Plaintiffs have met Rule 23(a)'s numerosity requirement. As to the California Resident Class, the declarations provided by Plaintiffs only state that Cardinal might employ between 100-200 drivers who are California residents. None of the declarations state how many Cardinal drivers are "subject to the unlawful sleeper berth deductions or other California-based minimum wage violations" as required to fall under Plaintiffs' proposed California Resident Class definition. See Derval, 2020 WL 430781, at *3 (finding plaintiffs failed to meet Rule 23(a)'s numerosity requirement where "the [r]eviews support[ed] only that [defendant] had seventy-eight customers," but did not say anything about how many of those customers "received unwanted text messages") In addition, while Plaintiffs' declarations estimate that "at least 100 non-California based drivers travel to California for deliveries where they stay at least one day" none of the declarations state how many Cardinal drivers "performed work in California for at least one full day" as required to fall within Plaintiffs' proposed Non-Resident California class. "Staying in" California, and "performing work in" California are two different things.

Plaintiffs' evidence only shows possible class membership. But "[e]vidence of possible class membership is not evidence of actual numerosity." Id.; see also Daicakis v. Comcast Corp., 11-cv-3002, 2013 WL 1878921, at *5 (N.D. Cal. May 3, 2013) (concluding that plaintiff failed to meet Rule 23(a)'s numerosity requirement where plaintiff alleged there were 649,576 subscribers, but did not offer any evidence regarding the number of those subscribers who were allegedly misled by defendant). Based on the declarations provided by Plaintiffs, there is a possibility that none of the estimated 100-200 California resident drivers, or the estimated 100 non-California resident drivers fall under either of the proposed

class definitions. This is particularly true in light of the evidence offered by Cardinal. For example, according the declaration of Thomas McDowell[3/], "[t]he vast majority of Cardinal's drivers are local drivers, which means they drive routes in a single state, are able to return home each night, and have no need to use a sleeper berth." (¶¶ 4-7.); see also Decl. H. Hardie[4/] ¶ 5 ("The vast majority of Cardinal's drivers are intrastate CMV drivers. Instrastate CMV drivers are 'local' drivers, which means they generally drive local routes within the same state and are able to return home to their families every night. Such drivers do not need to use a sleeper berth at all.") Thus, the Court finds Plaintiffs have failed to show that Rule 23(a)'s numerosity requirement is met.

### 2. Commonality

 *5 The commonality requirement of Rule 23(a) is met if "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). "[C]ommonality only requires a single significant question of law or fact." Mazza v. American Honda Motor Co., Inc., 666 F.3d 581, 589 (9th Cir. 2012). These questions exist where class members suffer the same alleged injury, such that simultaneous litigation is productive. United States ex rel.Terry v. Wasatch Advantage Group, LLC, 327 F.R.D. 395, 414 (E.D. Cal. July 30, 2018). "This does not mean merely that [class members] have all suffered a violation of the same provision of law." Id. Rather, the claims "must depend upon a common contention," the nature of which "is capable of classwide resolution." Id. Common litigation must "resolve an issue that is central to the validity of each one of the claims in one stroke." Id.

Here, Plaintiffs argue that the following five questions are common to the California Resident and Non-California Resident classes:

- Does Cardinal's policy of failing to pay its drivers for time spent in the 'sleeper berth,' including time spent by helper drivers working while logged in as 'sleeper berth,' violate California's requirement that employers pay workers at least minimum wage for all time worked?

- Are these tasks for which Cardinal does not pay drivers on a company-wide basis, such as sleeper berth time, compensable under California law?

- Do California's minimum wage laws apply to drivers while they are working within the state?

- Are Cardinal's standardized driver wage statements required to accurately show hourly wages, and total hours worked (including sleeper berth time)?

- Do California's laws regarding accurate itemized wage statements apply to drivers while they are working within the state?

(Mot. at 7.) Plaintiffs argue "[a]ll of these questions are capable of resolution on a class-wide basis because all either inquire into the lawfulness of Cardinal's company-wide policies and practices or present pure questions of law." (Id.) The Court disagrees.

First, the question of whether "California's minimum wage laws apply to drivers while they are working within the state" is not, as Plaintiffs suggest, a pure legal question. As the California Supreme Court recently held, "[t]here is no single, all-purpose answer to the question of when state law will apply to an interstate employment relationship." Ward v. United Airlines, Inc., 9 Cal. 5th 732, 751 (2020). In Ward, the Court found that, in order to answer the question of when a state law applies to an interstate employment relationship, the Court must look to what "kinds of California connections will suffice to trigger the relevant provisions of California law." (Id.) The Court rejected the argument that "the overtime laws of the employees' home state necessarily follow them into California." (Id.) The Court expressly declined to hold that "California's employment laws *always* apply to every minute or hour of work performed in this state or that these laws *never* apply when work is performed in part out of state." (Id. (emphasis in original).) Thus, determining whether California law applies here would require an individualized inquiry into whether each potential class member had sufficient contacts with California to suggest that California law should apply. For example, if one potential class member worked in California for "full days and weeks" at a time, California's minimum wage laws could apply to this driver. See id. However, if another class member only worked sporadically in California, but rarely for "full days or weeks," then California's minimum wage laws may not apply to them. Answering this question would require the Court to make an individualized inquiry into the contacts each proposed class member had in California in order to determine whether California's minimum wage laws applied to them.

 *6 Similarly, the questions (1) "[d]oes Cardinal's policy of failing to pay its drivers for time spent in the 'sleeper berth,'

including time spent by helper drivers working while logged in as 'sleeper berth,' violate California's requirement that employers pay workers at least minimum wage for all time worked," and (2) "[a]re these tasks for which Cardinal does not pay drivers on a company-wide basis, such as sleeper berth time, compensable under California law" are subject to individualized inquiry. As discussed above, the Court would first need to conduct an individualized assessment of whether California law applied. In addition, for those periods of "sleeper berth" time that were covered, the Court would need to conduct an individualized inquiry into whether each period was compensable under California law.

Under California law, compensable time means "time during which an employee is under the control of an employer" and "all time the employee is suffered or permitted to work, whether or not required to do so." Cal. Code Regs. tit. 8, § 11090, subd. 2(G). This does not include "time spent engaging in personal activities by choice." Troester v. Starbucks Corp., 387 F. Supp. 3d 1019, 1027-28 (C.D. Cal. 2019) (finding that under California labor law, employees were not entitled to compensation for time spent off the clock bringing in store's patio furniture after they forgot to do so while on the clock, or for time spent walking co-workers to their car). Some putative class members have stated they were free to spend their 10-hour sleeper berth break "off duty" and to use their "off duty" time as they wished. (See, e.g. M. Crowder[5/] Decl. ¶¶ 12-14 ("Although I may choose to rest in the CMV's 'sleeper berth' during periods when I am free of any responsibility to perform work for Cardinal (and would log my duty status as 'sleeper berth' while resting) I am not required to do so.... I can choose to eat in a restaurant, go to a movie or for a walk, visit with friend and relatives, or sleep in hotels or at the homes of friends or relatives.")) Accordingly, the fact that a driver logged time as "sleeper berth" does not necessarily mean he or she is entitled to compensation for that time under California law. Determining whether "sleeper berth" time is compensable would require an individualized inquiry into how each proposed class member spent their "sleeper berth" time.

Finally, the questions (1) "[a]re Cardinal's standardized driver wage statements required to accurately show hourly wages, and total hours worked (including sleeper berth time)," and (2) "[d]o California's laws regarding accurate itemized wage statements apply to drivers while they are working within the state" are each subject to individualized inquiry. California's wage statement law only applies if the "employee's principal place of work is in California." Ward, 9 Cal. 5th at 760-761, 755 ("For interstate transportation workers," California's wage statement law applies "if the worker performs some work here and is based in California, meaning that California serves as the physical location where the worker presents himself or herself to begin work."). Factors such as "employee location [and] employee residence ... are not pertinent" to whether California's wage statement statute applies. Id. at 760. Neither of Plaintiffs' proposed class definitions are adequately defined in terms of where employees perform the majority of their work or have their base of operations. Instead, both definitions are defined in terms of the proposed class members' "residence," which the California Supreme Court has found "not pertinent" to the issue of whether California's wage statement law applies. Therefore, the Court would have to conduct an individualized inquiry into whether California was each employee's physical location for each pay period.

*7 Based on the above, the Court finds Plaintiffs have failed to present a single question of law or fact common to the proposed classes.

### 3. Typicality

"The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." Hanon v. Dataproducts Corp., 976 F. 2d 497, 508 (9th Cir. 1992). "[R]epresentative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." Hanlon v. Chrysler Corp., 150 F.3d 1011, 1020 (9th Cir. 1998). "[C]lass certification should not be granted if there is a danger that absent class members will suffer if their representative is preoccupied with defenses unique to it." Hanon, 976 F. 2d at 508.

The Court finds Plaintiffs have failed to demonstrate that the named Plaintiffs' claims are typical of the proposed classes. First, Plaintiffs' evidence consists of six declarations from some of the named Plaintiffs. All six of the declarations are from residents of California. None of these proposed representatives are members of the Non-California Resident class. Thus, Plaintiffs have not submitted any evidence that there are named Plaintiffs who would adequately represent the Non-California Resident class.[6/]

Case 2:18-cv-08751-MCS-FFM  Document 99-1  Filed 11/25/20  Page 7 of 10  Page ID #:2485
Timothy Pavloff, et al. v. Cardinal Logistics Management Corp., Slip Copy (2020)
2020 WL 6821072

Second, Cardinal's evidence shows that all of the named Plaintiffs have previously entered into agreements releasing Cardinal from some or all of the claims brought in this action. In June of 2020, several of the named Plaintiffs executed settlement agreements releasing Cardinal from all claims. (See Opp. at 13, H. Hardie Decl. ¶¶ 25-26.) The remaining named Plaintiffs have each participated in one or more class action settlements with Cardinal. (Id. ¶¶ 20-23, (citing Dwight Jenkins v. Cardinal Logistics Management Corp., Case No. 34-2018-00238308 (Super. Ct. Sacramento)).) The Court therefore finds that the named Plaintiffs' claims are not typical of those of the proposed classes.

### 4. Adequacy

To fulfill the adequacy requirement, the named Plaintiffs must "fairly and adequately protect the interests of the class." Fed.R.Civ.P. 23(a)(4). To determine whether a named plaintiff will adequately represent the class, courts ask two questions: "(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class." Hanlon, 150 F.3d at 1020. With respect to conflicts of interest, "[t]he absence of typicality also creates a conflict of interest problem." Hesse v. Sprint Corp., 598 F.3d 581, 589 (9th Cir. 2010). Here, because the Court finds the named Plaintiffs have failed to show their claims are typical of other proposed class members, the Court similarly finds that the named Plaintiffs will not fairly and adequately protect the interests of the class.

 *8  Based on the above, the Court finds Plaintiffs have failed to satisfy any of the requirements of Federal Rule of Civil Procedure 23(a).

### B. Rule 23(b)(3)'s Predominance Requirement

Even if Plaintiffs met the requirements of Rule 23(a), they would still have to meet one of the three subdivisions of Rule 23(b). Under Rule 23(b)(3), the party seeking class certification must show that common questions of law or fact predominate over questions affecting individual members. Fed. R. Civ. P. 23(b)(3). The Rule 23(b)(3) predominance inquiry asks whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." In re Wells Fargo Home Mortg. Overtime Pay Litig., 571 F.3d 953, 957 (9th Cir. 2009). This inquiry focuses on "the relationship between common and individual issues." Id. This standard is "far more demanding" than the commonality requirement under Rule 23(b). Amchen Prods., Inc. v. Windsor, 521 U.S. 591, 623-24 & n. 18 (1997).

"Rule 23(b)(3) requires a district court to formulate some prediction as to how specific issues will play out in order to determine whether common or individual issues predominate." Dukes, 603 F.3d at 593 (citation and quotation marks omitted). "When common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication, there is clear justification for handling the dispute on a representative rather than on an individual basis." Torres v. Nutrisystem, 289 F.R.D. 587, 594 (C.D. Cal. 2013). However, if a predominant issue in a case requires "the separate adjudication of each class members' individual claim or defense, a Rule 23(b)(3) action would be inappropriate." Zinser, 253 F.3d at 1189 (quotations and citation omitted). The Court finds that here, the main issues in this case would require separate adjudication of each class members' individual claims.

### 1. Whether California Law Applies to Plaintiffs' Claims

First, as stated above, determining whether the various California laws at issue here apply to all members of the two proposed classes is a predominant issue in this case that requires the separate adjudication of each individual proposed class member's claims. (See Supra at 6 ("[D]etermining whether California law applies here would require an individualized inquiry into whether each potential class member had sufficient contacts with California to suggest that California law should apply.")) For this reason alone, the predominance inquiry is not met as to any of Plaintiffs' claims.

### 2. Plaintiffs' Minimum Wage Claims

Second, as previously discussed, determining whether each period of a proposed class members' "sleeper berth" time is covered by California's minimum wage law requires the separate adjudication of each sleeper berth period. The Court would first need to conduct an individualized assessment of whether California law applied. In addition, under California law, compensable time means "time during which an employee is under the control of an employer" and "all time the employee is suffered or permitted to work, whether or not required to do so." Cal. Code Regs. tit. 8, § 11090, subd. 2(G). This does not include time spent

engaging in personal activities. As stated above, several potential class members have stated that they spent time logged as "sleeper berth" engaged in personal activities. (See, e.g. Decl. J. Spaulding ¶ 14 ("Although I may choose to rest in the CMV's sleeper berth during periods when I am free of any responsibility to perform work for Cardinal and not working ..., I am not required to do so. During periods when I am free of any responsibility to perform work for Cardinal, ... I can choose to eat in a restaurant, go to a movie, or for a walk, or go to my brother's house in Phoenix, Arizona."). Thus, the predominance inquiry is not met as to Plaintiffs' California minimum wage claims.

### 3. Plaintiffs' Wage Statement Claims

**\*9** As discussed above, California's wage statement law only cover drivers who work principally in California, or who did not work principally in a single state but had a base of operations in California and performed some work in California. Ward, 9 Cal. 5th at 760-761, 755 ("For interstate transportation workers," California's wage statement law applies "if the worker performs some work here and is based in California, meaning that California serves as the physical location where the worker presents himself or herself to begin work."). A driver's "residence," - which is how both proposed classes are defined - is "not pertinent" to whether California's wage statement statute applies. Id. at 760. Thus, the Court would have to conduct an individualized inquiry into whether each proposed class member either (1) principally worked in California, or (2) had a base of operations in California in order to determine whether California's wage statement statute applied to each proposed class member.

### 4. Plaintiffs' Reimbursement Claim

Under California law, "[a]n employer shall indemnify his or her employee for all necessary expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer." Cal. Lab. Code § 2802(a). Ascertaining whether an expense is "necessary" "depends on the reasonableness of the employee's choices." Gattuso v. Harte Hanks Shoppers, Inc., 42 Cal. 4th 554 (2007). "[W]hen employees must use their personal cell phones for work related calls, [California] Labor Code section 2802 requires employees to reimburse them." Id. "If the use of the personal cell phone is mandatory, then reimbursement is always required, regardless of whether the employee would have incurred cell phone expenses absent the job." Id.; contra Chris Pyara v. Sysco Corp., 15-cv-01208, 2017 WL 928715, at *1-2 (E.D. Cal. Mar. 9, 2017) (denying class certification where employees were provided company-issued phones for business purposes but also communicated with supervisors with their personal cell phones).

Here, Plaintiffs provide several declarations stating they handled some work communications through their personal cell phones, and that Cardinal did not reimburse them for this cell phone use. (See, e.g. Decl. T. Pavloff ¶ 17 ("I handle professional communications primarily through my personal phone. Cardinal has never reimbursed me for my cell phone charges."). Plaintiffs do not, however, provide any evidence of a written policy or set of facts that clearly required or compelled class members to use their personal cell phones. Without this evidence, the " 'necessity' of utilizing one's own phone for work purposes will vary by individual: did some supervisors rely on contacting drivers via their personal phones more heavily than others? Was that due to the driver's preference?"[7/] Pyara, 2017 WL 928715 at *2 (denying plaintiffs' motion for class certification finding plaintiffs "claim [would] be based on individualized facts not well suited to class disposition without evidence of a policy or set of facts that clearly required ... class members to use their personal cell phones"). Here, the Court would have to conduct an individualized inquiry into each proposed class members' cell phone usage.

### 5. Plaintiffs' Rest Break Claim

The Court has already dismissed Plaintiffs' rest break claim without leave to amend. (See Dkt. No. 49.) However, even if the Court did not previously dismiss Plaintiffs' rest break claim, the Court would find Plaintiffs have failed to show that Rule 23(b)(3)'s predominance requirement is met as to this claim.

**\*10** Here, "Plaintiff[s] must show that Defendant had a general policy of preventing its drivers from taking meal and rest breaks." Cole v. CRST, Inc., 317 F.R.D. 141, 145 (C.D. Cal. 2016). In their Motion, Plaintiffs do not address Rule 23(b)'s predominance requirement with respect to Plaintiffs' rest break claim. Cardinal, however, presented several declarations showing that at least some Cardinal drivers and proposed class members did take rest breaks, and that Cardinal's policies allowed for these rest breaks. (See H. Hardie Decl. ¶¶ 14-16, Ex. 3 (California Meal and Rest

Break Procedures ("Procedures"); J. Spaulding Decl. ¶ 21 ("Cardinal's [Procedures] permit me to, among other things, take a 10-minute paid rest break (during which time I am relieved of all duties and Cardinal in fact encourages me to take rest breaks that are 11 to 15 minutes long) for every four hours I work."); J. Damon Decl. ¶ 20 ("No Cardinal employee has ever told me I should not take a rest break permitted by the Procedures, I should work through [a] rest break permitted by the Procedures, or that a rest break permitted by the Procedures should be less than ten minutes; just the opposite, actually. My supervisors have regularly reminded me of the Procedures and instructed me that I should ... take all rest breaks."))

Further, Plaintiffs' own evidence shows that, to the extent a driver was unable to take a rest break, Cardinal paid the driver the premium required by Section 226.7. (See Dkt. No. 33-3 at 8 (wage statement showing payments of $38.65 and $28.84 in rest break pay).) Given that Plaintiffs have not demonstrated that Cardinal had a class-wide policy of preventing drivers from taking rest breaks, and the evidence provided shows that Cardinal's drivers did take rest breaks, individual issues predominate with respect to Plaintiffs' rest break claim. See Cole, 317 F.R.D. at 145 (denying class certification where Plaintiffs failed to show Defendant had a generalized policy of preventing its drivers from taking breaks, "because a number of drivers, including Plaintiff, acknowledge that they took meal and rest breaks when needed").

**6. Plaintiffs' Waiting Time Claim**

Plaintiffs' Motion does not address Rule 23(b)(3)'s predominance requirement as to their waiting time claim. For the reasons stated above, Plaintiffs' waiting time claim would require the Court to make individualized inquiries into whether California's waiting time penalty law even applies to each proposed class member.

**7. Plaintiffs' Unfair Competition Law Claim**

Plaintiffs' Unfair Competition Law ("UCL") claim is derivative of Plaintiffs' other claims. Thus, for the reasons stated above, Plaintiffs have failed to demonstrate that common issues predominate over individual issues with respect to Plaintiffs' UCL claim.[8/]

**C. Rule 23(b)(3)'s Superiority Requirement**

Rule 23(b)(3) also requires Plaintiffs to show that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b). Because the Court finds that common questions of law or fact do not predominate over questions affecting only individual members as required for Plaintiffs to satisfy Rule 23(b)(3)'s predominance requirement, the Court declines to address the superiority requirement of Rule 23(b)(3).

**Conclusion**

 *11  For the foregoing reasons, the Court denies Plaintiff's Motion for Class Certification.

IT IS SO ORDERED.

**All Citations**

Slip Copy, 2020 WL 6821072

---

Footnotes

1     Michael Braun is a driver for Cardinal who resides in Washington.
2     Timothy Pavloff is a driver for Cardinal who resides in California.
3     Thomas McDowell is a driver for Cardinal who resides in California.
4     Holly Hardie is Vice President of Human Resources for Cardinal.
5     Mark Crowder is a truck driver for Cardinal.
6     Plaintiffs also provided the declarations of Michael and Sharon Braun, who both state they are drivers for Cardinal and reside in Washington. However, despite their declarations saying otherwise, Michael and Sharon Braun are not named plaintiffs in this case.
7     In fact, Cardinal provides evidence that it did not require drivers to use their personal cell phones. (See, e.g. Decl. M. Crowder ¶ 19 ("Cardinal does not require me to use my personal cell phone to make or receive work calls or texts, and instead provides me (and all other company drivers ... ) with a handheld mobile device ."); Decl. J. Damon ¶ 18 (same).

| | |
|---|---|
| 8 | Cardinal also argues Plaintiffs' California-Resident Class is an impermissible "fail-safe" class. (Opp. at 16.) "A fail-safe class is 'one that is defined so narrowly as to preclude[ ] membership unless the liability of the defendant is established." Brown v. DirecTV, LLC, 330 F.R.D. 260, 268 (C.D. Cal. 2019) (citing Torres v. Mercer Canyons Inc., 835 F.3d 1125, 1142 n. 7 (9th Cir. 2016). "Although the Ninth Circuit has not ruled directly on the appropriateness of fail-safe classes, it does not look favorably on precluding class certification under the fail-safe class theory." Id.; see also Melgar v. CSK Auto, Inc., 681 F. App'x 605, 607 (9th Cir. 2017) ("We further note, though we do not hold, that our circuit's caselaw appears to disapprove of the premise that a class can be fail-safe."). The Court therefore declines to find that Plaintiffs' California-Resident Class fails as an impermissible fail-safe class. |

**End of Document**　　　　© 2020 Thomson Reuters. No claim to original U.S. Government Works.